# CASES DETERMINED

BY THE

# SUPREME COURT

OF THE

## STATE OF MISSOURI

AT THE

### APRIL TERM, 1906.

*(Continued from Volume 196.)*

## THE STATE ex rel. CITY OF COLUMBIA v. WILDER, Auditor.

In Banc, June 1, 1906.

1. **City Indebtedness: Excess of Five Per Cent.** A debt sought to be incurred by a city by the issuance of bonds to construct sewers is invalid if the entire indebtedness of the city, including bonds issued for the construction of waterworks and electric light plants, together with all other indebtedness, already exceeds five per cent of the assessed valuation of all property within the city. [Brace, C. J., and Valliant and Lamm, JJ., dissenting.]

2. ———: ———: **Constitutional Provisions: Waterworks.** Section 12 of article 10 of the Constitution provides that no indebtedness of any city shall "be allowed to be incurred to an amount including existing indebtedness in the aggregate exceeding five per centum of the value of taxable property therein," and by an amendment thereto adopted in 1902 it was provided that cities having between 2,000 and 30,000 inhabitants may "be allowed to become indebted in a larger amount than specified

in section 12 of article 10 of the Constitution, not exceeding an additional five per centum on the value of the taxable property, for the purpose of purchasing or constructing waterworks, electric or other light plants, to be owned exclusively by the city." *Held, first,* that section 12 and the amendment, being *in pari materia,* must be read together; *second,* when read together, they mean that in no case can the city increase its indebtedness for any purposes except those expressed in the amendment, when its "existing indebtedness," for whatever purposes contracted, already exceeds five per cent; and, *third,* they do not mean that a city which has already incurred an indebtedness in excess of five per cent, including its water and light bonds, as well as all other debts, can thereafter issue bonds for sewer purposes, although the indebtedness, excluding the water and light bonds, and adding the proposed sewer bonds, would not equal five per cent.

*Held,* by Valliant, J., in a dissenting opinion, in which Brace, C. J., and Lamm, J., concur, *first,* that the dominant purpose of the amendment was to increase the taxing power of the cities embraced within its terms to enable them to own their waterworks and lighting plants; *second,* it being conceded that if the sewer bonds had been issued prior to the water and light bonds the city's power to increase its indebtedness for other purposes would not have been exhausted but the sewer bonds would have been legal, and the water and light bonds thereafter issued would also have been legal, the accidental fact that the water and light bonds were issued first will not deprive the city of the power to increase its indebtedness for other purposes, for to do that would be to permit an unimportant accidental fact to defeat the main purpose of the amendment; and, *third,* in determining the right of the city to issue the sewer bonds, the bonds already issued for water and light purposes should not be counted as a part of the city's "existing indebtedness."

## Mandamus.

WRIT DENIED.

*W. H. Rothwell, H. D. Murry* and *Silver & Brown* for relator.

(1)   The proposed bond issue of $10,000, together with the $30,700, the present indebtedness of the city, exclusive of the water and light bonds, being within the

five per cent limit authorized by section 12, and the $110,000, the present indebtedness of the city for water and light purposes, being within the additional five per cent limit expressly authorized by section 12a, it is therefore clear that the city has the power and authority under and by virtue of section 12, article 10, of the Constitution to issue the bonds in controversy.  (2) While it is true that municipal corporations have only such powers as are either expressly granted to them or such as are necessarily implied, and that grants of power are strictly construed, so as not to extend them beyond the purpose of the Legislature, yet, as said in Bank v. How, 56 Mo. l. c. 59, ''The construction must not be so strict or technical as to defeat the evident objects and purposes of its creation.''

*Herbert S. Hadley,* Attorney-General, and *N. T. Gentry,* Assistant Attorney-General, for respondent.

(1)  A city may become indebted in excess of its yearly income to an amount of five per cent of the value of the taxable property therein.  This five per cent the Constitution specially provides shall include existing indebtedness.  The amendment to the Constitution of 1902, allows a city to exceed its annual indebtedness five per cent for a special purpose, to-wit, in order to purchase a water and light plant, and to issue bonds in payment therefor  This was held to be the object, and the sole object, of said provision in a recent decision of this court. State ex rel. v. Allen, 183 Mo. 282.  As the existing indebtedness, $140,700, is already in excess of said five per cent, relator cannot further increase its said indebtedness. This 1902 amendment was not enacted for the purpose of giving authority to a city to construct sewers, lay out parks, or do any of the many needed and useful improvements connected with our modern cities.  But it specially authorizes a city to increase its indebtedness five per cent ''for the purpose

of purchasing or constructing water works, electric or other light plants, to be used exclusively by the city so purchasing or constructing the same." Laws 1905, p. 325. (2) As there is no express authority for the issuance of the bonds in question, respondent insists that relator is not entitled to a peremptory writ for that reason. On the subject of the implied powers of a municipal corporation to increase its indebtedness, the authorities agree that a doubt, if there be a doubt, must be resolved against the exercise of such implied power. 1 Dill., Mun. Corp., sec. 89; City ex rel. v. Eddy, 123 Mo. 557; 2 Smith, Mun. Corp., secs. 861-2-3.

GANTT, J.—This is an original proceeding in this court to obtain a peremptory writ of mandamus compelling the respondent, the State Auditor, to register certain sewer bonds to the amount of $10,000, which the city of Columbia has presented to him for registration, and which he has refused to register.

The undisputed facts are that the city of Columbia is a municipal corporation, organized under the general laws of the State as a city of the third class, and has a population of nearly eight thousand. According to the last previous assessment, the assessed valuation of the taxable property in said city amounts to $2,462,-050. At the present time, and at the time of holding a special election, hereinafter referred to, the bonded indebtedness of said city was $140,700. Of this indebtedness bonds to the amount of $110,000 were issued in payment for water works and electric light plant, which was to be owned by said city. All of said water and light bonds were issued on April 1, 1904, except $10,000 worth, which were issued October 2, 1905.

On July 21, 1905, an ordinance of the city was passed and approved having for its purpose the incurring of an additional bonded debt of $10,000 for the purpose of constructing sewers in the said city. The bonds were to mature in fifteen years, payable at the option

of the city in five years, and to bear not more than five per cent. The proposition was submitted in due form to a vote of the people at a special election held on August 8, 1905, and received the assent of more than two-thirds of the voters. The city authorities, in accordance with law, afterwards declared by ordinance that said proposition in favor of the issuance of said bonds had been adopted. Thereafter the bonds in question were prepared and presented to the respondent, the State Auditor, and he refused to register them because they were in excess of the power of the city to become indebted, and this proceeding, as already said, is to require him to register the said bonds.

Section 12 of article 10 of the Constitution of Missouri, 1875, provides: "No county, city, town or township, school district or other political corporation or subdivision of the State shall be allowed to become indebted in any manner or for any purpose to an amount exceeding in any year the income and revenue provided for such year, without the assent of two thirds of the voters thereof voting at an election to be held for that purpose; nor in cases requiring such assent shall any indebtedness be allowed to be incurred to an amount including existing indebtedness in the aggregate exceeding five per centum on the value of the taxable property therein, to be ascertained by the assessment next before the last assessment for state and county purposes, previous to the incurring of such indebtedness: *Provided,* That with such assent any county may be allowed to become indebted to a larger amount for the erection of a courthouse or jail. *And provided further,* That any county, city, town, township, school district or other political corporation or subdivision of the State, incurring any indebtedness, requiring the assent of the voters as aforesaid, shall, before or at the time of doing so, provide for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also to constitute

a sinking fund for payment of the principal thereof, within twenty years from the time of contracting the same." . At the general election held in this State in November, 1902, another section designated as section 12a, was added to the Constitution. Said amendment to the Constitution is as follows: Section 12a: "Any city in this State containing not more than thirty thousand nor less than two thousand inhabitants, may, with the assent of two-thirds of the voters thereof voting at an election to be held for that purpose, be allowed to become indebted in a larger amount than specified in section 12 of article 10 of the Constitution of this State, not exceeding an additional five per centum on the value of the taxable property therein, for the purpose of purchasing or constructing waterworks, electric or other light plants, to be owned exclusively by the city so purchasing or constructing same," with the same proviso practically as that contained in the original section 12 of article 10 of the Constitution in regard to the providing for annual tax to pay the interest and to constitute a sinking fund for the payment of the principal. [Laws 1901, pp. 268, 269; Laws 1905, pp. 324, 325.]

As the bonds which the Auditor refused to register were not issued for the purpose of constructing water works, electric or other light plant to be owned by the city, they do not fall within the provisions of section 12a of the Constitution, so that the only question presented is whether the bonded indebtedness to the amount of $110,000, which was contracted in payment of the water and light plant in 1904, is to be included in determining what is the five per cent limit of said city's indebtedness. It is insisted by the city that it should not be taken into account in determining the amount of its indebtedness at the time the bonds to the amount of $10,000 were voted and issued for the purpose of constructing sewers in the city. Including the $110,000 or bonded indebtedness, the total indebtedness of the city when the bonds which the city now seeks to have regis-

tered were voted and issued, was $140,700, and five per centum on the value of the taxable property in said city, to-wit, $2,462,050, was $123,102.50, so that it is evident that if the $110,000 of bonds constituted a part of the indebtedness of the city within the meaning of section 12 of article 10 of the Constittuion, there was no authority for incurring this additional indebtedness of $10,000, because the five per centum on the assessed value had already been exceeded. But it is insisted by the learned counsel for relator that by excluding the bonds for the $110,-000 from the total indebtedness of $140,700, and adding the $10,000 of the proposed bond issue to the indebtedness incurred previous to the issuing of the $110,000 bonds, this issue of $10,000 of bonds is kept within the five per cent limitation, and the entire bonded indebtedness is within the ten per cent limit provided in section 12a of the Constitution as amended in 1902, and that therefore the city had the right to have these $10,000 bonds registered. And it is argued that if the city had, before it issued this $110,000 of bonds for waterworks and electric light plant, issued this $10,000 of bonds for the purpose of constructing sewers, the $10,000 of bonds thus added to the then pre-existing debt would have made the indebtedness incurred up to that time only $40,700, and it would have been perfectly lawful for the city to have then voted and issued the $110,000 of bonds under the provisions of section 12a of article 10 of the Constitution as amended in 1902, and that therefore the fact that the $110,000 of water bonds were *first* issued will not deprive the city of the privilege the amendment of 1902 was intended to confer upon it, and hence the $110,000 of bonds is not to be taken into account in estimating the then existing indebtedness. In consideration of these respective contentions on the part of the Auditor and the city, it is obvious, we think, that section 12 of article 10 of the Constitution and section 12a of the amendment thereto in 1902, must be read together, being *in pari materia,* and the amendment be-

ing evidently intended to supplement section 12 of article 10 of the Constitution. Now section 12 of article 10 provides: "Nor in cases requiring such assent shall any indebtedness be allowed to be incurred to an amount, *including existing indebtedness*, in the aggregate exceeding five per centum of the value of the taxable property therein." And section 12a by its very terms refers to section 12, and provides that "any city in this State containing not more than 30,000 nor less than 2,000 inhabitants, may, with the assent of two-thirds of the voters thereof voting at an election to be held for that purpose, be allowed to become indebted in a larger amount than specified in section 12 of article 10 of the Constitution of this State, not exceeding *an additional* five per centum on the value of the taxable property therein, for the purpose of purchasing or constructing waterworks, electric or other light plants, to be owned exclusively by the city."

This amendment referring as it does to the power of incurring indebtedness as provided in section 12 of article 10, is limited to the restriction specified in section 12 of article 10, save and except that for the specific purpose of acquiring waterworks and electric light plant, the city may incur a debt not exceeding an additional five per centum on the value of the taxable property therein. And section 12 of article 10 of the Constitution expressly provides that in incurring any indebtedness in any manner or for any purpose for an amount exceeding in any year the income and revenue provided for such year, the indebtedness to be incurred shall not exceed five per cent on the value of the taxable property, *including existing indebtedness*. That the $110,000 in bonds issued in 1904 were an existing indebtedness at the time the bonds in question were voted and issued there can be no doubt whatever. Nor do we think when the two sections 12 and 12a are read together, there can be any less doubt that the additional

five per cent on the taxable property includes the then existing indebtedness, and whether the debt is to be incurred under section 12 of article 10, or section 12a of the same article, the amount of existing indebtedness must always be taken into account. The Constitution makes no exception as to the character of the existing indebtedness.

It is urged that the accidental fact that the city had already exceeded the five per cent limit before it undertook to incur this last $10,000 for bonds, ought not to operate against it since it could have avoided this collision with the Constitution by having first issued the sewer bonds and then voted the $110,000 for waterworks and electric bonds. But as we regard it, the question is simply one of incurring a debt by the city in view of the constitutional restrictions imposed upon it, and we can find nowhere in section 12 or 12a or any other part of the Constitution any authority for making a discrimination in the character of the debts which make up the total of the municipality's existing indebtedness when it seeks to incur an additional indebtedness. On the contrary as we read the Constitution the existing indebtedness includes any and all legal debts of the city. It was attempted to make such a distinction in Potter v. Douglas County, 87 Mo. 239, and it was made in that case, but that case was repudiated in Barnard & Co. v. Knox County, 105 Mo. l. c. 391, in which it was held that the strong and comprehensive language of section 12 of article 10 of the Constitution admits of no distinction between debts created by law. And we add it does not permit the character of a particular indebtedness to exclude it from constituting a part of the existing indebtedness which must be included in estimating the five per cent limit.

We cannot assent to the proposition that the sole purpose of the amendment was to confer power to tax. On the contrary it was designed just as section 12 of article 10 of the Constitution was, to restrict the power

of incurring indebtedness and it only extended the power to contract a new indebtedness over and above existing indebtedness to an *additional five* per cent for a specific purpose. Obviously the first five per cent, even in that case, must include the existing indebtedness and so must also the ten per cent include that indebtedness in estimating the limit. This, we take it, is conceded by all parties. As the debt sought to be incurred by the issuance of the bonds now sought to be registered is not for the acquisition of waterworks or electric or other light plant to be owned exclusively by the city, section 12a of article 10 is out of the case, and the sole question is whether the city had already exceeded the five per cent limit when it undertook to incur this debt evidenced by its bonds to the amount of $10,000 for sewers, and that it had, we think, is beyond the peradventure of a doubt. In estimating its existing indebtedness, the city was bound to include the $110,-000 of valid bonds already issued as a part of said indebtedness, and when this is done it is clear that the proposed indebtedness will exceed the constitutional limit of five per cent and is unauthorized and therefore void, and the State Auditor properly refused to register the same, and accordingly the writ of mandamus must be and is denied.

*Burgess, Fox* and *Graves, JJ.,* concur; *Brace, C. J., Valliant* and *Lamm, JJ.,* dissent.

### DISSENTING OPINION.

VALLIANT, J.—The city of Columbia sues for a writ of mandamus to require the State Auditor to register certain bonds which the city purposes to issue.

This is a city of the third class, having a taxable wealth, according to the assessment next before the last assessment, of $2,462,052. The indebtedness of the city already is $140,700, of which $110,000 is the amount of

the city's bonded debt incurred in 1904 for the purpose of purchasing and constructing waterworks and electric light plant. On July 1, 1905, an ordinance of the city was passed and approved having for its purpose the incurring of an additional bonded debt of $10,000 for the purpose of constructing sewers in the city.

The bonds were to mature in fifteen years payable at the option of the city in five years and to bear not more than five per cent interest. The proposition was submitted in due form to a vote of the people and received the assent of more than two thirds of the voters. Thereafter all proper proceedings were had by the city council and other officers, the bonds were prepared, signed and presented to the State Auditor to be registered, as required by section 5167, Revised Statutes 1899. Without going through the details it is sufficient to say that the record shows that all the requirements of the law to make these proposed bonds legal and valid have been complied with and they are legal and valid unless their amount added to the amount of the indebtedness the city already owes would make a sum beyond the limit the city is authorized to go in incurring indebtedness.

Section 12 of article 10 of our Constitution authorizes the city, with the assent of two-thirds of the voters, to incur indebtedness to the limit of five per cent of the value of its taxable property, but forbids it to go beyond the limit. At the general election in November, 1902, the Constitution in that respect was amended by adding another section, 12a, the beginning of which is:

"Any city in this State containing not more than thirty thousand nor less than two thousand inhabitants, may, with the assent of two-thirds of the voters thereof voting at an election to be held for that purpose, be allowed to become indebted in a larger amount than specified in section twelve of article ten of the Constitution

of this State, not exceeding an additional five per centum on the value of the taxable property therein, for the purpose of constructing waterworks, electric or other light plants, to be owned exclusively by the city," etc.

In February, 1904, its indebtedness then being $38,-500, the city, availing itself of that amendment to the Constitution, instituted proceedings which resulted in its issuing its bonds to the amount of $110,000, for the purpose of buying and extending the waterworks and electric light plant within its limits, and those bonds are now outstanding, making, with the other indebtedness at the date of the present proceeding, the total debt of the city $140,700, which is in excess of five per cent of the value of the city's taxable property.

Now it is suggested by the State Auditor that the limit of five per cent prescribed in section 12 of article 10 having been already reached and passed, and the authority given by the amendment of 1902, section 12a, to go beyond the first five per cent limit having been given only for the one purpose therein expressed, it cannot be exercised for any other purpose, and as these proposed bonds are not to be used for the purpose in that amendment expressed, they cannot be issued under that authority.

When we come to construe a clause in the Constitution we must treat it with the same liberality that we treat other written laws; we must not adhere so closely to the letter as to destroy the purpose, the purpose must be ascertained and given effect. [State ex rel. v. McGowan, 138 Mo. 193.] What was the purpose of this amendment? Under the original section 12, five per cent was the limit to cover indebtedness for any and all purposes, but experience having shown that when kept within that limit the cities of this class were unable to own waterworks and lighting plants adequate to their needs, the people amended the Constitution and gave such cities power to increase the tax rate by a levy of five per cent in addition to the five per cent formerly

authorized, provided the additional levy was to be used for waterworks and lighting plants. After the adoption of that amendment the city, with the assent of two thirds of its voters, could incur indebtedness to the extent of ten per cent of the value of its taxable wealth, provided five per cent of the ten was to be used for waterworks and light plants to be owned by the city.

Five per cent of the value of the taxable property of this city is $123,102.50.

If the city of Columbia had, before it issued its $110,000 bonds for waterworks and lighting plants, taken the action it is now seeking to take and had issued its bonds for $10,000 for the purpose of constructing sewers, the $10,000 added to the then pre-existing debt would have made the total debt of the city $40,700, or about one-third of the original five per cent limit, and if after the $10,000 sewer bonds had been issued the city had availed itself of the additional five per cent authorized by this amendment and had issued its water and light bonds to the amount that it did issue them, there would be no question of the validity of the sewer bonds or the water bonds because all the indebtedness added together would be within the extended limits. It is thought, however, that because the waterworks bonds were issued first, that power is exhausted, and that is so if we take the water bonds into this account because counting those bonds the original five per cent limit has been passed and the bonds now to be issued are not for the purpose expressed in the amendment. But we do not think that the accidental fact that the water bonds were issued first will deprive the city of the privilege the amendment of 1902 was intended to confer. The purpose — the main purpose — the only purpose of the amendment of 1902 was to increase the taxing power of the cities embraced in its terms to enable them to own their waterworks and lighting plants; that is what the General Assembly had in mind when it

proposed the amendment and it is what the people had in mind when they adopted it. The conferring of taxing power was the dominant thought in the amendment, the order in which the city might incur its obligations was overlooked, was not thought of, it was of no importance and at most it can now be deemed as an accident of only secondary consideration, yet if we should adopt the strict literal construction contended for by the respondent we would allow the altogether unimportant accidental fact to defeat the main purpose of the amendment. That would be misconstruction; when there is a seeming conflict between the dominant purpose and an unimportant or secondary consideration, the dominant idea must prevail.

We construe section 12 and 12a of article 10 of the Constitution, taken together, to mean that when the amount of indebtedness that the city may incur under the terms of section 12 is to be estimated, the amount of its indebtedness incurred since the amendment and within the extra five per cent limit of section 12a, incurred "for the purpose of purchasing or constructing waterworks, electric or other light plants, to be owned exclusively by the city so purchasing or constructing the same," is not to be taken into the estimate.

The city of Columbia has the lawful authority to issue the proposed $10,000 sewer bonds in question, has complied with the requirements of the law in such case made and provided, and is therefore entitled to have the bonds registered as required by section 5167, Revised Statutes 1899. *Brace, C. J.,* and *Lamm, J.,* concur in this opinion.