# THE STATE ex rel. CITY OF CARTHAGE v. GEORGE E. HACKMANN, State Auditor.

### In Banc, April 1, 1921.

1. **CITY INDEBTEDNESS: Maximum Limit: Last Previous Assessment.** The assessment mentioned in Section 12 of Article 10 of the Constitution limiting the indebtedness that a city of the third class may incur in any year to "five per centum on the value of the taxable property therein, to be ascertained by the assessment next before the last assessment for state and county purposes, previous to the incurring of such indebtedness," means a complete assessment, and the words "previous to the incurring of such indebtedness" mean previous to the authorization of the indebtedness at the election held by the voters of the municipality. So that where the election was held on September 16, 1919, and the State Board of Equalization had not completed the equalization of the 1918 assessment and certified its action thereon previous to said September 16, 1919, the assessment of 1916 was the "next before the last assessment," and must be used as the measuring rod in determining whether the bonds authorized at such election, added to the city's then existing indebtedness, exceeded five per cent of the value of the taxable property therein.

2. ———: ———: **Existing Indebtedness: For City Waterworks.** In determining whether bonds authorized at an election to be issued by a city exceeds the five per cent of the value of the taxable property mentioned in Section 12 of Article 10 of the Constitution, existing indebtedness due to the issuance of bonds for the construction of municipal waterworks is not to be considered. In view of Section 12a and the amendment of said Section 12a adopted in 1920, the indebtedness authorized by said Section 12a for the purpose of constructing or purchasing waterworks, electric or other light plants, to be owned exclusively by the city, is not to be treated as a part of the existing indebtedness in determining the validity of a subsequent issue of bonds under the authority of Section 12 of Article 10. [Overruling State ex rel. Columbia v. Wilder, 197 Mo. 1.]

3. **CONSTITUTIONAL CONSTRUCTION.** The rules laid down by the courts for the construction of constitutional provisions are the same as those governing the construction of statutes.

4. ———: **Adoption of Judicial Construction: Subsequent Legislative Construction.** It is a mere legal fiction that when the people adopted an amendment to a section of the Constitution they adopted the construction previously placed upon it by the Supreme Court; but the necessity of adopting that legal fiction is avoided by a legislative act, passed prior to the adoption of the amendment, which places a meaning on the constitutional provision different from that previously placed upon it by judicial construction.

## Mandamus.

WRIT ISSUED.

*Frank R. Birkhead* for relator.

(1)   The proper assessment to' be used as a basis of determining the city's debt limit is that based upon the ownership as of June 1, 1917, and not that as of June 1, 1916, as contended by the respondent. The record shows that the 1918 assessment of Jasper County property was practically completed and certified to the county clerk prior to September 16, 1919, the date of the special bond election, although the State Board of Equalization had not actually adjourned. In fact the State Board did not finally adjourn until February 19, 1920. (2) In calculating its debt limit, the City of Carthage is entitled to exclude its outstanding bonds issued to construct its waterworks owned exclusively by the city. Sec. 12a, Art. 10, Mo. Constitution. This question was before this Court in 1906 in the case of State ex rel. City of Columbia v. Wilder, 197 Mo. 1. Judge VALLIANT, wrote the dissenting opinion, concurred in by Judges BRACE and LAMM, and his views are correct. The $100,000 outstanding waterworks bonds was the only indebtedness of said city at the date of the special election on September 16, 1919. Therefore by excluding such indebtedness these street paving bonds are well within the five per cent limit. (3) The construction of a section or provision of the Constitution must not be so strict or technical as to defeat the evident objects and purposes of its creation. Missouri

Loan Bank v. How, 56 Mo. 59; State ex rel. v. McGowan, 138 Mo. 187, 192; 25 Ruling Case Law, 1077; 12 C. J., 700. (4) The act under which these street paving bonds were voted and issued expressly provides that cities in ascertaining their debt limits in issuing bonds under such act, may exclude outstanding waterworks bonds. Sec. 9256a, p. 570, Laws 1919. (5) The Fiftieth General Assembly proposed two constitutional amendments amending Sections 12 and 12a of Article 10, both of which were adopted by the people at the last general election. One of these amended said article by striking out Section 12 and adding a new section in lieu thereof, to be known as Section 12. The first ten lines of the new Section 12 are identical with the same part of the original section, the words "including existing indebtedness" being retained. This same General Assembly enacted the act above referred to (Laws 1919, pp. 569 to 572), which clearly excludes from the "existing indebtedness" the indebtedness of cities incurred under the provisions of Section 12a. It cannot reasonably be said that the law-makers intended that Section 12 requires cities to calculate their outstanding waterworks and light bonds as part of their "existing indebtedness" in the face of an act passed by the same body which expressly declares that such cities may disregard such bonds, in ascertaining their debt limit. 12 C. J. 714; Cook County v. Healey, 222 Ill. 310. The other amendment proposed and ratified, amended Section 12a so that said section now applies to all cities with less than 30,000 inhabitants, and provides further that such cities may become indebted in a larger amount than specified in Section 12, not exceeding an additional ten per cent of the value of taxable property therein for the purpose of purchasing or constructing waterworks, lighting plants and ice plants. Here again is seen the dominant idea and purpose of increasing the taxing power of cities that they might own these utilities.

*Jesse W. Barrett,* Attorney-General, and *Robert J. Smith,* Assistant Attorney-General, for respondent.

(1) The facts and figures appearing in relator's petition show that the indebtedness is in excess of the limit fixed by the Constitution of this State. Sec. 12, Art. 10, Mo. Constitution; State ex rel. v. Wab. Railroad, 251 Mo. 141; State ex rel. v. Gordon, 251 Mo. 309. (2) Petition shows upon its face that said bonds are null and void and should not be registered, and are in excess of limitation fixed by Section 12, Article 10 of the Constitution, and contrary to the provisions of Section 12a, Article 10, and are therefore invalid. State ex rel. City of Columbia v. Wilder, 197 Mo. 1; State ex rel. v. Wabash Railroad, 251 Mo. 141; State ex rel. v. Gordon, 251 Mo. 303. Section 9256a, p. 570, Laws 1919, is contrary to the provisions of the Constitution, and did not authorize this election as claimed by relator; it certainly could not be contended that the proposed amendment by the Fiftieth General Assembly amending Section 12 and 12a of the Constitution approved by the people at the last general election could affect the election of September 16, 1919. Sec. 12, Article 10, Mo. Constitution; Sec. 12a, Article 10, Mo. Constitution.

DAVID E. BLAIR, J.—On January 11, 1921, the City of Carthage as relator filed its petition for a writ of mandamus to compel respondent as Auditor of the State of Missouri to register bonds in the sum of $150,000, authorized by the relator at a special election held September 16, 1919, for the purpose of paying a portion of the cost of paving in said city, as provided for by Laws of 1919 at pages 569 to 572 inclusive.

The regularity of the proceedings of said city in said election and the subsequent proceedings before the city council and the authority of such city to issue bonds of this character are not disputed. Respondent refused registration of said bonds on the ground that the issue of $150,000, added to the then existing indebtedness of

relator city, exceeded the limit of indebtedness of said city as fixed by Section 12 of Article 10 of the Constitution.

Respondent waived the issuance of the alternative writ of mandamus, and filed his demurrer to the petition, thereby admitting the truth of all facts well pleaded in the petition. Further facts necessary to an understanding of the case will be set out in the opinion.

I. Relator contends that the amount of indebtedness it is authorized to incur under Section 12, Article 10, of the Constitution of Missouri, should be ascertained from and measured by the assessment of 1917, and not by the assessment of 1916. The provision of said section limits the indebtedness that relator and other cities may incur in any year to "five per centum on the value of the taxable property therein, to be ascertained by the assessment next before the last assessment for state and county purposes, previous to the incurring of such indebtedness." The assessments mentioned in this section mean completed assessments. [State ex rel. City of Dexter v. Gordon, 251 Mo. 303; State ex rel. v. Wabash, 251 Mo. 134; Steinbrenner v. St. Joseph, 226 S. W. 890.] The clause "previous to the incurring of such indebtedness" means previous to the authorization of the indebtedness in the election held by the voters of the municipality. [State ex rel. City of Dexter v. Gordon, supra; Steinbrenner v. St. Joseph, supra.] The State Board of Equalization had not completed the equalization of the 1918 assessment and certified its action thereon previous to September 16, 1919, the date of the election, and hence the assessment of 1916 was the "next before the last assessment," and must be used as the measuring rod.

II. The total indebtedness of the City of Carthage existing and outstanding on September 16, 1919, was $100,000. The value of the taxable property in said city as determined by the assessment of 1916 was $3,602,153.48, and five per cent thereof was $180,107.67. If the $100,000

existing indebtedness, which is due to the issuance of bonds for the construction of municipal waterworks, is considered as part of the existing indebtedness, mentioned in Section 12, of Article 10, limited to five per cent of the taxable property, the issue of $150,000 of paying bonds involved in this case is clearly invalid, because it contemplates a bonded indebtedness of $250,-000, or an excess of $69,992.33.

In the case of State ex rel. City of Columbia v. Wilder, 197 Mo. 1, hereinafter referred to as the Columbia Case, the facts were almost identical with those in the instant case, and the decision was adverse to the claims of the City of Columbia. It doubtless was because of the controlling authority of that case that respondent refused to register the bonds of the city of Carthage. In the Columbia Case the facts were that the city had an existing indebtedness of $140,700, of which $110,000 was issued and sold for the purpose of paying for the waterworks and electric light plant. An additional debt of $10,000 for the purpose of constructing sewers was authorized by election and subsequent city ordinances. The State Auditor refused registration, as here. Five per cent of the value of the taxable property of the City of Columbia was found to be $123,-102.50, so that the total indebtedness, including the bonds issued for waterworks and electric light plant purposes, exceeded such five per cent.

The contention made by the City of Columbia was that, in view of the amendment of the Constitution designated as Section 12a of Article 10, the $110,000 waterworks and electric light plant bonds should not be considered as part of the existing indebtedness, which cannot exceed five per cent., as provided in Section 12 of Article 10, but should be regarded as falling within the additional five per cent allowance at that time provided by Section 12a, Article 10. Treated thus, the proposed sewer bonds would not have created an excessive indebtedness, and the issue would have been held to be valid. Under that state of facts the court held that the $10,000 issue of sewer

bonds was excessive because the outstanding waterworks and electric light plant bonds must be considered as part of the existing indebtedness mentioned in Section 12, Article 10. The issue for sewer purposes was therefore void, and the peremptory writ was denied. That decision was rendered by a divided court. GANTT, J., wrote the majority opinion, in which BURGESS, FOX, and GRAVES, JJ., concurred, and VALLIANT, J., wrote the dissenting opinion, in which BRACE, C. J., and LAMM, J., concurred.

The dissenting opinion of VALLIANT, J., held that the constitutional amendment, Section 12a of Article 10, was adopted for the purpose of increasing the taxing powers of the cities embraced in its terms, to enable them to acquire their own waterworks and electric light plants, and the order in which the city might increase the indebtedness was overlooked and not thought of by the General Assembly in submitting the amendment, and was immaterial and unimportant.

It necessarily follows, and relator candidly admits, that if the holding in the Columbia Case is adhered to the peremptory writ must be denied in this case. But relator urges the unsoundness of the conclusion reached by the majority of the judges in the Columbia Case, and asks that we again review the matter.

There are certain well-understood rules laid down by the courts for the construction of constitutional provisions, and they are the same as those governing legislative enactments.

It was said in State ex rel. v. McGowan, 138 Mo. l. c. 192, in discussing the general rules of construction of constitutional provisions that: "The organic law is subject to the same general rules of construction as other laws, due regard being had to the broader objects and scope of the former, as a charter of popular government. The intent of such an instrument is the prime object to be attained in construing it."

In 12 Corpus Juris, 700, it is said: "The court, therefore, should constantly keep in mind the object sought to be accomplished by its adoption, and the evils, if any, sought to be prevented or remedied."

And also in 12 Corpus Juris, 702, it is said: " If a literal interpretation of the language used in a constitutional provision would give it an effect in contravention of the real purpose and intent of the instrument as deduced from a consideration of all its parts, such intent must prevail over the literal meaning."

It can hardly be disputed that, under the limitation fixed by Section 12, Article 10, the average city was not able to issue bonds for waterworks and electric light plants in addition to indebtedness created for the erection of a city hall, fire-fighting apparatus, jail, sewers, and other very proper objects of extraordinary municipal expenditures.   There were few growing cities that had not used their authority to create bonded indebtedness to such an extent as to forbid them engaging in the ownership and operation of municipal light and water utilities. A demand arose for the extension of municipal activity into this field, and this, no doubt, led to the submission and adoption of Section 12a of Article 10, for the purpose of increasing the debt-making or taxing power of such cities to enable them to engage in municipal ownership of such utilities.

The construction adopted in the Columbia Case makes it impossible to issue bonds for city halls, jails, fire-fighting apparatus, sewers, city paving, and other very proper purposes in cities which had first autharized bonds for light and water plants.   It also prevents those cities, which had existing indebtedness under the constitutional limit under Section 12, Article 10, and thereafter voted additional bonds under Section 12a, Article 10, for water and light plants, from voting bonds for any other purpose until the water and light bonds are paid off below the five per cent limitation fixed by Section 12, Article 10, notwithstanding every dollar of the debt for other purposes existing at the time the water and light bonds were issued has been paid off.

An amendment to Section 12a, Article 10, submitted and adopted in 1920, extended the operation of that section to all cities of less then 30,000 population, increased

the limit for incurring indebtedness from five per cent of the taxable property value in such cities to ten per cent, and included the purchase or construction of ice plants as an additional use for such increased debt-making or taxing power. The adoption of said amendment only emphasizes the difficulties under which cities will labor in the future if they are shackled by further adherence to the rule laid down in the Columbia Case. Any city that hereafter authorizes bond issues for waterworks, ice plants, and light plants to its full capacity cannot issue an additional dollar of bonds for any other municipal purpose until not only all existing indebtedness for other purposes has been paid, but also until such time as more than half its water and light plant bonds have been retired. In other words, the existence of outstanding bonds for light and water plants constitutes a positive obstruction in the path of city growth and developement along other lines. To the extent they are availed of the provisions of Section 12a, Article 10, destroy the benefits of Section 12, Article 10. The framers of the Constitution surely cannot be said to have intended any such harsh and narrow construction as this. In construing the section the court should not adopt such construction, unless no other construction can be arrived at from the language used.

It may be urged that when the people adopted the amendment to Section 12a, Article 10, in 1920, they also adopted the construction placed on Section 12 and Section 12a by this court in the Columbia Case. Of course, this is merely a legal fiction. Probably not one voter in a hundred who voted for the amendment had any actual knowledge of what this court decided in the Columbia Case. While it will not be contented that it is competent for the Legislature to put a construction on a provision of the Constitution in conflict with the construction of this court, it is more reasonable to suppose that the voters in the 1920 election were familiar with the directly opposite construction of Section 12, article 10, made by the General Assembly in 1919, than they were with the construction of this court 14 years before the election was held.

"It is an established rule of construction that, where a constutional provision has received a settled judical construction, and is afterwards incorporated into a new or revised constitution, it will be presumed to have been retained with a knowledge of the previous construction, and courts will feel bound to adhere to it. Prior legislative construction is likewise presumed to have been adopted by subsequent adoption of the provision so construed." [12 Corpus Juris, 717.]

"If the meaning of the Constitution is doubtful, a legislative construction will be given serious consideration by the courts.   .   .   .   A contemporaneous legislative exposition of a constitutional provision is entitled to great deference." [12 Corpus Juris, 714.]

The law under which relator issued the bonds here in question was enacted in 1919, and, to avoid their invalidity under the construction in the Columbia Case, provides:

"Such bonds when authorized by ordinance shall not exceed including existing indebtedness five per cent of the assessed valuation of the taxable property in said city to be ascertaind by the assessment next before the last assessment for state and county purposes, previous to the incurring of such indebtedness, except that any indebtedness incurred under the provisions of Section 12a of Article 10 of the Constitution of the State of Missouri shall not be considered in construing this section." [Laws 1919, p. 570.]

The existence of the recent legislative construction at least avoids the necessity of assuming that the 1920 amendment adopted the construction in the Columbia Case.

It may be that a strict and technical construction of the language of Section 12a, Article 10, justifies the conclusion reached in the Columbia Case that indebtedness authorized by Section 12a, Article 10, should be treated as part of the existing indebtedness in determining the validity of subseqeunt issuance of bonds under authority of Section 12, Article 10, but such construction

287 Mo.—13

waives aside all considerations based on the history of the difficulties confronting the municipalities, and gives no weight or importance to the real object and purpose of the amendment, and absolutely destroys its beneficial and remedial office. It is not a necessary conclusion that the clause "including existing indebtedness," found in Section 12, be construed to include bonds issued under authority of Section 12a.

We think the dissenting opinion in the Columbia Case is sound. We quote with approval two paragraphs therefrom as follows:

"It is thought, however, that because the waterworks bonds were issued first, that power is exhausted, and that is so if we take the water bonds into this account, because counting those bonds the original five per cent limit has been passed, and the bonds now to be issued are not for the purpose expressed in the amendment. But we do not think that the accidental fact that the water bonds were issued first will deprive the city of the privilege the amendment of 1902 was intended to confer. The purpose—the main purpose—the only purpose of the amendment of 1902, was to increase the taxing power of the cities embraced in its terms to enable them to own their waterworks and lighting plants; that is what the General Assembly had in mind when it proposed the amendment, and it is what the people had in mind when they adopted it. The conferring of taxing power was the dominant thought in the amendment, the order in which the city might incur its obligations was overlooked, was not thought of, it was of no importance, and at most it can now be deemed as an accident of only secondary consideration, yet if we should adopt the strict literal construction contended for by the respondent we would allow the altogether unimportant accidental fact to defeat the main purpose of the amendment. That would be misconstruction. When there is a seeming conflict between the dominant purpose and an unimportant or secondary consideration, the dominant idea must prevail.

"We construe Section 12 and 12a of Article 10 of the Constitution, taken together, to mean that when the amount of indebtedness that the city may incur under the terms of Section 12 is to be estimated, the amount of its indebtedness incurred since the amendment and within the extra five per cent limit of Section 12a, incurred 'for the purpose of purchasing or constructing water-works, electric or other light plants, to be owned exclusively by the city so purchasing or constructing the same,' is not to be taken into the estimate."

It follows that the case of State ex rel. City of Columbia v. Wilder, 197 Mo. 1, should not longer be adhered to, and should be overruled, and that this court should issue its peremptory writ of mandamus, requiring the registration of the bonds issued by relator. It is so ordered. *Walker, C. J.,* and *J. T. Blair, Higbee,* and *Elder, JJ.,* concur; *Graves, J.,* dissents, and adheres to views in case of State ex rel. City of Columbia v. Wilder, 197 Mo. 1; *Woodson, J.,* dissents.