172 So. 8

BORDES v. EAST JEFFERSON WATER-
WORKS DIST. NO. I et al.

No. 34187.

Dec. 21, 1936.

John E. Fleury, of Gretna, for appellant.

Campbell & Holmes, Dudley C. Foley, Jr., and Walter W. Wright, all of New Orleans, for appellees.

ROGERS, Justice.

Defendants' plea of prescription of 60 days in bar of plaintiff's action was overruled by the judge of the district court. On the merits, he pronounced the following judgment, viz.:

"This is a suit by John Bordes, a resident and taxpayer of the parish of Jefferson, against the East Jefferson Waterworks District No. 1, for an injunction, enjoining, prohibiting and restraining the Board of Commissioners of said Waterworks District from disposing of unsold bonds remaining in the hands of said Board, amounting to the sum of $227,000.

"A rule nisi was issued and evidence was heard, and after considering the evidence in the case, the court has reached the conclusion that the facts alleged in the petition of plaintiff have been proven, but

the court does not agree with the legal conclusions advanced by the plaintiff.

"The sole grounds of attack, however, as contended for by the plaintiff are (1) that the sale of the unsold bonds amounting to the sum of $227,000 should be based upon the assessed valuation of property in the Waterworks District, as shown by the assessment roll of the parish of Jefferson, for the year 1935, and not on the assessed valuation of the property in the Waterworks District for the year 1931; (2) on the additional ground that the sale of said unsold bonds amounting to the sum of $227,000, when added to the already outstanding bonds amounting to the sum of $1,523,000, will exceed the constitutional limitation of 10 per cent., fixed by article 14, § 14, subdivision (f) of the Constitution of the state of Louisiana for the year 1921 [as amended in 1926, see Act No. 261 of 1926, § 1]; and (3) on the additional ground that the election authorizing the issuance of the aforesaid $500,000 of bonds of said District which was held on June 28, 1932, and the remainder of said bonds being in the sum of $227,000 have not been actually sold and delivered as of date of the filing of his petition; that therefore more than three years have intervened between said dates, which period of time contravenes the limitation set up by the Constitution and statutes of this state, and for that reason said bonds in the sum of $227,000 now sought to be sold and delivered are illegal, null, and void.

"It appears from the pleadings and the evidence, that on July 9, 1929, an election was held within the territorial limits of

said Waterworks District, and a proposition was submitted to the taxpaying voters to incur debt and issue bonds to the extent of $1,250,000, for the purpose of constructing and maintaining a waterworks system, and to purchase an existing waterworks system and plants located within the territorial limits of said District, this debt to be represented by bonds payable over a period of 30 years, and to bear interest at a rate not exceeding 6 per centum per annum.

"This election carried, and accordingly, bonds in the sum of $1,250,000 were issued and sold, and the proceeds used for the construction of a waterworks plant and distribution system.

"On June 28, 1932, another election was held throughout the Waterworks District, at which a proposition to incur additional debt and to issue bonds therefor in the sum of $500,000 for the purpose of completing the waterworks distribution system, and for additions, betterments, and improvements to same, and this election also carried. The results in both cases were duly promulgated in accordance with law.

"There is no dispute in this case either as to the facts or the law respecting the issuance or sale of the first issue of bonds of $1,250,000 during the year 1929. These bonds were issued and sold on the basis of the assessed valuation of the taxable property within the territorial limits of the District, as shown by the assessment roll of the parish of Jefferson for the year 1928.

"The aforesaid $500,000 or second issue of bonds so the evidence discloses diligently was sought to be sold, by due and proper advertisements from time to time, on the open market, commencing in the summer of 1932, but without success, the failure of said bonds to be sold being chargeable to the general economic depression throughout the state and nation in that year and in the following year. In October, 1933, commissioners of the District made an application to the Public Works Administration at Washington for a loan and grant to enable them to carry out the purposes submitted to the voters by the terms of the proposition of the election in 1932, and the Commissioners sought a loan and grant of $410,000 and after considerable negotiation, a contract was finally entered into between the Public Works Administration and the District whereby the government would purchase $290,000 of said bonds. This contract was formally entered into November 23, 1934, and thereafter, pursuant to the rules and regulations of the Public Works Administration, the District authorities proceeded to have the bonds printed and made ready for delivery. (Following the date of the aforesaid contract, the District advertised for sale and did sell on December 22, 1934, $210,000 of the said $500,000 issue of bonds, the proceeds being used for the purchase of a competing waterworks system, said transaction being agreeable to the Public Works Administration.) This was the status of the case in the spring of 1935 when the Legislature of Louisiana met and passed Acts Nos. 6 and 10 of the Second Extraordinary Session for the year 1935, and Act No. 21 of the Fourth Extraordinary Session of 1935. These acts in

brief provided against public bodies of the state making contracts relative to the expenditures of money for public works without the approval of the State Advisory Board, and prohibiting the expenditures of federal funds within the state of Louisiana, by the government of the United States or any agency thereof, and providing penalties for violations of said acts. Due to the aforesaid laws, the Public Works Administration at Washington, in or about the month of June, 1935, suspended the execution of the aforesaid contract entered into between the District and said Administration.

"On November 4, 1935, the Board of Commissioners of the District, sold on the public market the sum and amount of $63,000 of its bonds, with the knowledge and consent of the Public Works Administration, which sale reduced the sum and amount of said bonds to $227,000.

"The Legislature of Louisiana for 1936 repealed two of the aforesaid laws, and amended the third law, the result of said legislation being that the Public Works Administration at Washington announced its readiness to proceed to consummate the loan by virtue of the terms and conditions of the aforesaid contract for the purchase of said bonds, said contract being dated November 23, 1934, the remaining amount of unsold bonds being at this time $227,000.

"It is against the sale of these bonds that Bordes, plaintiff in this suit, brought his action, the grounds thereof having been previously set forth in this opinion.

"The plaintiff's first two grounds of attack are based upon his interpretation of article 14, § 14 (f) which in part reads as follows:

" 'No debt shall be incurred and bonds issued therefor by any subdivision hereunder for any one of the purposes herein provided, which, including the existing bonded debt of such sub-division for such purposes * * * shall exceed in the aggregate ten per centum of the assessed valuation of the taxable property of such sub-division, to be ascertained by the last assessment for parish, municipal or local purposes previous to incurring such indebtedness.'

"The evidence shows that the property assessment roll for that part of the parish of Jefferson which is within the territorial limits of the Waterworks District for the year 1935, being the last official assessment roll filed and recorded, amounts to a total of taxable property in the sum of $13,986,757. Therefore, if the $227,000 of unsold bonds be added to the amount of outstanding bonds (the 'existing bonded debt') which have heretofore been sold, the total amount of bonds issued and sold by the Board will amount to the sum of $1,750,000, which is more than 10 per cent. of the total assessed valuation of property in said Waterworks District for the year 1935, which property valuation amounts to $13,886,757, aforesaid.

"The contention of the plaintiff is that the Board cannot legally issue and sell bonds in an amount exceeding $13,398,757.70 which is 10 per cent. of the assessed valuation of property within the District for the year 1935 in which year the $227,000 of bonds were issued. The existing

bonded debt of the District amounted to $1,523,000 at the time of the filing of plaintiff's suit. Of course, the defendant takes the position that at the time (1935) when bonds in the amount of $210,000 and bonds in the further amount of $63,000 were sold, that there was ample leeway for the issuance and sale of said bonds in so far as the total assessed valuation of property in the District is concerned, and that the issuance and sale of said bonds were within the constitutional limitation of 10 per cent. of the assessed valuation, as set up by the Constitution of Louisiana for 1921, as amended (see article 14, § 14 (f).

"The question before the court is whether the Board is legally authorized to sell the bonds on the basis of the assessed valuation of property in the Waterworks District, as shown by the assessment roll of property in said District, for the year 1931, since the bonds were authorized by an election held in the year 1932, or whether these bonds are limited as to sale on the basis of the assessment roll for the year 1935, and whether, if the remaining bonds are disposed of, the amount of the unsold bonds when added to the present 'existing bonded debt' will exceed the 10 per cent. constitutional limitation within the meaning of article 14, § 14, subdivision (f) of the Constitution of the state of Louisiana for the year 1921.

"It appears that on the first proposition, that is, what assessment roll governs with respect to the issuance of special tax bonds, the Supreme Court of Louisiana passed upon this question in the case of Kansas City Southern R. Co. v. Hendricks,

150 La. 134, 90 So. 545, 546, and they made use of the following language.

" 'Before the proposition is submitted to the property tax payers the municipal authorities must frame it. In framing it, they must have something definite to base it on. The taxpayers themselves, in order to reach a correct conclusion as to the measure of authority they may grant, ought to have something definite to act upon. The only definite thing to which they may refer, beyond what is contained in the proposition submitted, in measuring the authority they may grant, is the last assessment. If a future assessment is held to be the one intended, then a fact of importance at once becomes unknown; and the article of the constitution scarcely contemplates that the taxpayers should be called upon to act upon uncertainties, or to give uncertain authority, dependent upon future valuations for its effectiveness.

" 'Therefore, as there is nothing in article 281 of the Constitution of 1898, as amended, and as carried into the Constitution of 1913, requiring that the computation be based on the last assessment filed prior to the date that the bonds are issued, and as the reasons that may be assigned are against that view, and support the view that such computation must be based on the last assessment filed before the election, we rule accordingly. In this case, that assessment is the one of 1919.' .

"So, construing article 14, § 14 (f) of the Constitution in the evidence developed upon the trial of this case, and considering the rationale of the decision of the Supreme Court above cited, I have reached

the conclusion that on this branch of the case, the plaintiff is not entitled to any relief.

"I am of the opinion that the words in the constitutional provision (article 14, § 14 (f) ' * * * to be ascertained from the last assessment for parish, municipal or local purposes previous to incurring such indebtedness,' mean previous to the authorization (the election) to incur the indebtedness. (The words 'such indebtedness,' as used in the section quoted, are equivalent in meaning to the words 'the *authorized* indebtedness'.) I adopt as my view the rule laid down in State ex rel. City of Carthage, Mo., v. Hackmann, State Auditor, 287 Mo. 184, 194, 229 S.W. 1078, 1079, in which case the Supreme Court of Missouri held that the words 'previous to the incurring of such indebtedness' mean and are equivalent to 'previous to the *authorization* of the indebtedness in the election held by the voters of the municipality.' (Italics mine.)

"This brings us to the second question—whether the sale of the $227,000 of bonds would at this time be violative of article 14, § 14 (f) of the Constitution of Louisiana for the year 1921, since the bonds were issued in 1932 on the basis of the assessment roll for the year 1931, at which time the total assessment of the Waterworks District amounted to the sum of $19,527,049.

"At that time the Waterworks District could have issued bonds to the extent of $1,952,704.90. They had already issued bonds to the extent of $1,250,000 in 1929. Therefore, they had leeway for the issu-

ance of additional bonds to the extent of $700,000. It is clear, therefore, that when the additional bonds to the extent of $500,000 were authorized in 1932, if this amount be added to the first or preceding issue, the total of both issues does not exceed, in the aggregate, 10 per cent. of the assessed valuation of the taxable property of the Waterworks District based on the assessment for the year 1931, and the Board was well within its legal rights; and the Constitution itself specifically provides that the 10 per cent. limitation shall be based upon the 'last assessment, previous to the incurring of *such* indebtedness,' which provision I have hereinabove construed and assigned reasons therefor.

"There is nothing in our law that says or means that a sale or sales shall be based upon any other assessment valuation than the total valuation of the year preceding the year of the authorization (election), of the bonds. This assessment valuation previous to an election to incur debt, is the yardstick by which all bond issues are measured. The subsequent sale or sales, whether made immediately or in the following year or years makes no difference, within the meaning of the Constitution, and since the issuance of the bonds should be predicated upon the assessment roll of the preceding year of the election, I am of the opinion that the proposed sale of the unsold bonds, amounting to the sum of $227,000, in the hands of the Board of Commissioners at this time, would not be violation of article 14, § 14 (f) of the Constitution of this state for 1921, as amended.

"As to the remaining contention of the plaintiff that, inasmuch as the election

authorizing the issuance of the aforesaid $500,000 issue of bonds of said District was held on June 28, 1932, and that the remainder of said bonds amounting to $227,000 has not been actually sold and delivered as of the date of the filing of this petition, more than three years have intervened between said dates, which period of time he alleges contravenes the limitation relating thereto set up by the Constitution and statutes of this state, and that for said reason the bonds in the amount of $227,000 now sought to be sold and delivered are illegal, null, and void, I am of the following opinion:

■ "The above third ground of attack is without merit for the reason that the Constitution of Louisiana for 1921, as amended does not prescribe that bonds actually shall be *sold* within three years from the date of the election authorizing the issuance of said bonds. Should the plaintiff be relying on subdivision (h) § 14 of article 14, Constitution of Louisiana for 1921, as amended, he has misconstrued the intent and meaning of this provision.

"The section in part provides as follows: 'Such bonds shall become due and payable in annual instalments beginning not more than three years after the date of issuance.'

"The provision simply means that the issuing body has the right to postpone, if it so desire, the date of the first maturity or maturities of the principal of a bond or bonds (until) not more than three years after the date of said bonds or bonds specified in the issuing resolution or ordinance. Furthermore, the Legislature, in the Ex-traordinary Session of 1921, in Act No. 46 of said Session, the enabling act of article 14, § 14 (f), expressed its interpretation of the wording of said Constitutional provision by incorporating into section 29 of said act the following language: 'The governing authority issuing the bonds, shall by resolution fix the times within the maximum period prescribed hereby, when said bonds shall become payable. Said bonds shall be payable in annual installments beginning not more than three years after the *date* thereof.' (Italics mine.)

"The interpretation relates to the time when the first maturity or maturities of an issue of bonds may be payable and not necessarily to the date of the resolution or ordinance authorizing and directing the issuance of the bonds. It is conceivable that it may often be quite practicable and advantageous to the issuing body to have the issuing resolution or ordinance for the bonds to be dated at a time considerably after the date of adoption of said resolution or ordinance.

"For the reasons above assigned, it is therefore ordered, adjudged and decreed, that the rule nisi herein issued be discharged; that the writ of injunction herein prayed for be denied, and that plaintiff's demand be rejected at his cost.

"Judgment rendered, read and signed in open court, parish of Jefferson, at Gretna, La., this 10th day of November, 1936.

"[Signed]   L. Robert Rivarde,
                                        "Judge."

The reasons given by the judge of the district court appear satisfactory to us.

None of the cases cited on behalf of plaintiff are appropriate to the instant case. The facts in those cases are not similar to the facts involved in this case. In none of the cited cases does it appear that a contract of purchase was involved. The only reason for the delay in issuing and selling the bonds involved in this case is that they were a portion of a group of bonds covered by the terms and conditions of an advantageous interest-rate contract, embracing the additional emolument of a grant or gift of 30 per cent. of the total amount to be borrowed by the defendant Board of Commissioners.

As we find the judgment on the merits to be correct, there is no necessity for our passing on the defendants' plea of prescription.

For the reasons assigned, the judgment appealed from is affirmed.