## THE STATE ex rel. MELVILLE L. WILKINSON et al. v. JAMES B. EDWARDS et al., Members of Board of Election Commissioners of St. Louis

### In Banc, October 21, 1924.

1. **REFERENDUM: Legislative Ordinance.** An ordinance authorizing the city counsellor to institute condemnation proceedings in the Federal court of another state to acquire land in such state, to be used as an approach and railroad right of way to a municipal bridge over a navigable river, is legislative in character; and consequently another ordinance repealing said ordinance is likewise legislative in character, and is subject to referendum to the vote of the people, under a charter provision declaring that "the people shall have power, at their option, to approve or reject at the polls any ordinance."

2. ———: ———: **To Acquire Land in Another State.** The fact that the right of way authorized by an ordinance to be condemned and used as an approach and appurtenance to a municipal bridge is located outside of the city, and, in fact, in another state, separated from the city by a navigable river, does not take the subject of condemnation of such right of way out of the legislative field of the city, and make of the ordinance an administrative or executory order. The city has the right to vote and issue bonds and therewith to acquire a right of way to be used as an approach to a municipal bridge, and an ordinance directing the city counsellor to institute condemnation proceedings in a Federal court to acquire title or the right to use land located in another state, to be used as approaches to such bridge, and based upon an act of Congress authorizing the city to construct such bridge, is legislative in

character; and consequently another ordinance repealing said ordinance is likewise legislative in character, and subject to referendum.

Headnotes 1 and 2: Municipal Corporations. 28 Cyc. 352 (1926 Anno).

## *Mandamus.*

PRELIMINARY RULE DISCHARGED.

*Glendy B. Arnold* for relators.

(1) In determining whether or not the measure in question is or is not an ordinance, "the form in which the act is expressed is immaterial; the act denotes its own character." State ex rel. v. Gates, 190 Mo. 558; Tipton v. Mormon, 72 Mo. App. 612; Dillon on Mun. Corp. (5 Ed.) sec. 570; Springfield v. Knott, 49 Mo. App. 612. (2) The term referendum, as defined by the Constitution, relates solely to the legislative power of the people to make laws, as distinguished from legislative power vested in the General Assembly. Mo. Constitution, art. 4, sec. 57. (3) The power of the people, at the polls, to make executive or administrative orders is unknown to the Constitution and laws of this State. "In the absence of a very clear declaration to the contrary, it must be presumed that the power of referendum was intended to apply solely to the legislative power." Hopping v. City of Richmond, 150 Pac. 979; Erwin v. Jersey City, 60 N. J. L. 145. (4) The referendum power of the city charter relates exclusively to ordinances which are legislative in character, and not to ordinances which are administrative or executive in character. Ordinances 32616 and 33016 are not legislative in character. Schroeder v. Zehrung, 188 N. W. 237; Brazell v. Zeigler, 26 Okla. 826; Dooling v. Fitchburg, 136 N. E. 616; Long v. Portland, 53 Ore. 99; Acme Dairy Co. v. Astoria, 49 Ore. 520; Yarbrough v. Donaldson, 170 Pac. 1165. (5) The Board of Aldermen of St. Louis has both legislative and administrative or executive

powers. "And even though when acting in either capacity they speak in the form of an ordinance, yet, if what they say is not the promulgating of a law, they are not exercising legislative powers." State ex rel. v. Gates, 190 Mo. 556. (6) If the referendum of the charter be construed as permitting a referendum upon measures adopted by the Board of Aldermen which are executive or administrative in character, then said referendum provisions of said charter violate Article IV, Section 57, of the State Constitution. (7) Ordinances 32616 and 33016 relate exclusively to the construction of an approach to the Municipal Bridge in the State of Illinois. The city of St. Louis, in the construction of said approach, does not act in the State of Illinois as a municipal corporation. People v. St. Louis, 291 Ill. 600. (8) It is axiomatic that laws and ordinances have no extra territorial force, and for that reason said Ordinances 32616 and 33016 were intended to be executive or administrative orders. (9) The power and the duty to determine the necessity and location of public bridges, including interstate bridges, in counties of this State, is vested in the county courts, and that power and duty is judicial and not legislative. State ex rel. v. Woodside, 254 Mo. 593; State ex rel. v. Thomas, 183 Mo. 230; R. S. 1919, secs. 10686, 10693. (10) The legislative authority under which the Municipal Bridge was built was derived from Congress, the Legislature and the charter of the city. The power of eminent demain under which the city acts in the State of Illinois was derived exclusively from Congress. Haeussler v. St. Louis, 205 Mo. 675; R. S. 1919, sec. 8839; Revised Code 1914, pp. 535, 606.

*Oliver Senti* and *Arthur H. Bader* for respondents; *Edward W. Foristel* and *W. M. Hezel, amici curiæ.*

(1) Ordinance 33016 is subject to the referendum provisions of the charter. Charter of St. Louis, art. 4, sec. 1. (2) No suit can now be filed by the city to con-

demn a right of way for the northeast approach of the Municipal Bridge until its location is approved by the Interstate Commerce Commission. Act of Congress of Feb. 13, 1924. (3) When the bonds for the northeast approach were voted by the people of St. Louis the area within which the bridge approach must be located was defined. Ordinance 32343. (4) Ordinance 32616, which established the right of way for the northeast approach of the Municipal Bridge, was enacted in the exercise of the legislative power of the Board of Aldermen. Ely v. St. Louis, 181 Mo. 723; Kansas City v. Hyde, 196 Mo. 506. (5) The character of an ordinance, that is, whether legislative or administrative, is determined by its substance; Ordinance 33016, which in terms repeals a part of Ordinance 32616 and in effect repeals the whole thereof, and which nullifies the result of the bond issue election of February 9, 1923, on proposition 18, is legislative in character. State ex rel. v. Gates, 190 Mo. 540.

DAVID E. BLAIR, J.—This is an original proceeding in mandamus against the Board of Election Commissioners of the City of St. Louis, whereby relators seek our peremptory writ to compel respondents to reject certain referendum petitions, to expunge the same and all orders and resolutions relating thereto from the records of said board, and to refuse and decline to submit the subject-matter of said referendum petitions to a vote of the people of said city, upon the ground that the ordinance in question is not legally subject to a vote of the people under the referendum provisions of the charter of said city or the laws of this State, and that, by reason of such fact, it is the clear legal duty of respondents to reject such referendum petitions.

Our alternative writ was ordered issued, but respondents have waived the issuance and service thereof and have filed their return to the petition as and for such writ. Respondents do not contend that mandamus is not the proper remedy. To justify their invocation of such

remedy, relators rely upon State ex rel. v. Holtcamp, 267 Mo. 412; State ex rel. v. Roach, 230 Mo. 408; State ex rel. v. Guinotte, 113 Mo. App. 399, and State ex rel. v. Reynolds, 121 Mo. App. 699. The result we have reached makes it unnecessary for us further to consider the appropriateness of that remedy.

It is admitted that the controlling question for decision is whether the ordinance, which is sought to be made the subject of referendum, is or is not legislative in character. With the issue thus clearly defined, we will state as concisely as possible the facts necessary to an understanding of the case. The effect of the return is to admit all the facts pleaded in the petition. Such return denies the legal conclusion of relators that said ordinance is not legislative in character. We quote from the petition as follows:

"Relators further state that on the 14th day of September, 1923, the Board of Aldermen of the City of St. Louis passed Ordinance 32616, a true copy of which is attached hereto and made a part hereof, locating and defining, in the County of St. Clair, in the State of Illinois, a right-of-way for the construction thereon of an elevated approach to what is known as the Municipal Bridge, across the Mississippi River, at said city of St. Louis, and directing the City Counsellor of said city to institute all necessary legal proceedings for the acquisition, by said city, of title to said right-of-way; that the direction to said City Counsellor to institute said legal proceedings is contained in 'Section Two' of said ordinance.

"That thereafter said City Counsellor, in pursuance of the authority and direction of said ordinance, caused to be instituted, in the District Court of the United States for the Eastern District of the State of Illinois, to the May, 1924, term thereof, a condemnation suit, wherein the city of St. Louis is plaintiff and Marie McClain and others are defendants, for the purpose of acquiring for said city of St. Louis title and ownership of said right-of-way; that said suit was brought pursuant to an express

State ex rel. Wilkinson v. Edwards.

grant to said city by the Congress of the United States of the power of eminent domain, to aid said city to construct said Municipal Bridge and its approaches in the State of Illinois; that said suit is now pending in said District Court of the United States, but no process has ever been issued by said court or served on any of the defendants in said cause; that for the purpose of constructing said elevated approach to said bridge, the people of the city of St. Louis, at an election held for that purpose, on the 9th day of February, 1923, authorized an issue of bonds in the sum of $1,500,000; that after the passage of Ordinance 32616, and upon and after a thorough investigation, by the Board of Public Service of the City of St. Louis, of the cost of constructing said approach, the Board of Aldermen was on the 8th day of April, 1924, advised by the President of said Board of Public Service that said approach could not be built for less than $5,500,000; that on account of the insufficiency of said bond issue, the Board of Aldermen of the city passed a resolution or order in the form of an ordinance and which is numbered 33016, revoking and rescinding the aforesaid direction and authority to said City Counsellor, contained in Section Two of Ordinance 32616, and directing said City Counsellor to dismiss said condemnation suit; that the ordinance containing said rescinding resolution or order is in words and figures as follows:

" 'An ordinance directing the City Counsellor to dismiss the condemnation suit now pending in the United States District Court for the Eastern District of Illinois, seeking the condemnation of property for the northeastern approach to the Municipal Bridge and repealing all ordinances inconsistent herewith.

" '*Be it ordained by the City of St. Louis,* as follows:

" 'Section One.    The City Counsellor is hereby authorized and directed to dismiss the suit filed in the name of the City of St. Louis against Marie McClain et al., now pending in the District Court of the United States for the Eastern District of Illinois, which suit seeks the condem-

nation of land and properties for the northeastern approach to the Municipal Bridge.

" 'Section Two. All ordinances and parts of ordinances inconsistent with the provisions of this ordinance are hereby repealed.

" 'Approved April 21, 1924.'

"That thereafter, on the 19th day of May and the 27th day of June, 1924, certain citizens of the city of St. Louis, being dissatisfied with the passage of said Ordinance 33016, caused to be filed in the office of and directed to the Board of Election Commissioners, composed of the respondents herein, referendum petitions, requesting the Board of Aldermen to re-consider and reject said ordinance *in toto,* and in the event of its failure so to do, requesting the Board of Election Commissioners to refer said ordinance to a vote of the people of the city of St. Louis for their approval or rejection; that the filing of said referendum petitions, and their sufficiency, was duly certified by respondents on the 7th day of July, 1924, to the Board of Aldermen, for their re-consideration, and on the 16th day of September last said Board of Aldermen formally refused to re-consider or repeal said Ordinance 33016, and as a result thereof the respondents are now preparing to and will submit the same to a vote of the people of said city, at the general election to be held therein on the 4th day of November, 1924; that said referendum petitions were filed under and by virtue of Article VI of the Charter of the City of St. Louis, and in so far as the form of the petitions and the number of signatures thereto are concerned, said petitions conform, in all respects, to the requirement of said article of said charter."

It is alleged in the petition and admitted in the return that the submission of the ordinance to the vote of the people will entail the expenditure of public money and it is also admitted that the relators are resident citizens, registered voters and taxpayers of the city of St. Louis.

Article VI, Section 1, of the Charter of the City of St. Louis, provides for a referendum vote of the people of the city of St. Louis as follows:

"The people shall have power, at their option, to approve or reject at the polls any ordinance (except it be an emergency measure as defined in Section 20 of Article IV), such power being known as the referendum and to be invoked and exercised as herein provided."

It is not contended that Ordinance 33016 comes within any of such exceptions.

The parties, as well as the *amici curiæ*, who have filed a brief by leave of court, are fully in accord upon the proposition that, if said Ordinance 33016 is legislative in character, it is subject to the referendum.

As Ordinance 33016 directed the City Counsellor to dismiss condemnation proceedings in the United States District Court in Illinois, instituted under authority of Ordinance 32616, it becomes necessary to examine the character of the latter ordinance. The title of said ordinance reads as follows:

"An ordinance to establish, in the State of Illinois, County of St. Clair, City of East St. Louis and Village of Fairmont City, the right of way and appurtenances thereto for the northern extension of the eastern elevated railroad approach of the St. Louis Municipal Bridge across the Mississippi River, over, across and through certain private property and the intervening highways, streets, avenues, alleys and railroad or rights of way and authorizing and directing the City Counsellor therein and therefor, to institute and conduct a proceeding or proceedings in condemnation, and for every other legal action or step appropriate or requisite in the premises, against all necessary or proper persons, corporations, boards, commissions, or other parties, for the appropriation, damaging and acquiring of the designated property, and rights therein, and of such rights of crossing of or over the highways, streets, avenues, alleys and rights of way, all in consonance with and to exercise and effect the purposes

and intent of the Act of Congress of the United States of America, entitled: 'An act to authorize the city of St. Louis, a corporation organized under the laws of the State of Missouri, to construct a bridge across the Mississippi River' approved June twenty-fifth, nineteen hundred and six, including the subsequent acts supplemental to and amendatory thereof, and as further provided by law.''

There can be no serious doubt that Ordinance 32616 was legislative in character, unless the facts that the right of way, sought to be acquired for the municipal bridge, was located in Illinois, affects its character in that regard. [Ely v. City of St. Louis, 181 Mo. 723; Kansas City v. Hyde, 196 Mo. 498, 1. c. 506.] If the right of way sought to be condemned had been situated in the city of St. Louis, the said ordinance would clearly be legislative in character. It is contended that the fact that the proposed right of way is located outside of the city of St. Louis, and, in fact, in another state, takes the subject of the ordinance outside of the legislative field of the city and hence the ordinance must be regarded as an administrative or executive order.

Relators contend that the city of St. Louis does not and cannot act as a municipal corporation in the State of Illinois. That proposition is necessarily true. They rely upon People v. St. Louis, 291 Ill. 600. There is nothing in that case from which it may be argued that the city of St. Louis could or did not act in its legislative capacity in passing Ordinance 32616 under authority of the Act of Congress. All that case decided, so far as we are now concerned, was that Section 3, Article IX, of the Illinois Constitution, providing that, "The property of the State, counties, and other municipal corporations, both real and personal, . . . may be exempted from taxation," did not justify the argument "that this bridge is exempt as a municipal corporation's property as the municipality owning it is not a municipality of this State, and it is clear that this section referred only to the municipal

authorities within this State.'' The right of the city of St. Louis to acquire property for bridge approaches in Illinois under the Act of Congress was not challenged by the Illinois Supreme Court in that case.

Relators argue that ordinances of a city can have no extra-territorial force and, therefore, Ordinances 32616 and 33016 were intended to be executive or administrative orders. This could not be true with respect to ordinances authoritatively passed relating to public works outside such city, which would be legislative in character, if passed in relation to the same character of public works within the corporate limits of such city. It has been settled in Haeussler v. St. Louis, 205 Mo. 656, that the city of St. Louis had the right to vote and issue bonds and therewith to acquire right of way and build this very bridge and its approaches. This decision was based upon Laws 1905, page 94 (Sec. 8839, R. S. 1919), the Act of Congress of June 25, 1906, and various provisions of the charter of said city.

It is apparent that Ordinance 32616, providing as it did for the establishment of a right of way for the said bridge approach and directing the City Counsellor to institute and conduct condemnation proceedings to acquire same, even though such right of way was located outside of the city limits, was legislative in character. [Ely v. St. Louis, supra; Kansas City v. Hyde, supra.]

Since the City Counsellor was directed by Section 2 of Ordinance 32616 to institute and conduct such condemnation proceedings, and by Ordinance 33016 such City Counsellor is directed to dismiss such condemnation proceedings, the necessary effect of the latter ordinance is to repeal, at least in part, the prior ordinance, which we have found to be legislative in character. It needs no argument to demonstrate that a legislative act cannot be repealed in whole or in part by an administrative order. Such act can only be repealed by a later legislative act. As said in 28 Cyc. 385, ''a repeal cannot be effected by mere resolution or order, not passed and published as an ordinance.''

These considerations distinguish Dooling v. Council of Fitchburg, 136 N. E. (Mass.) 616, relied on by relators. There the order sought to be referred to the people was a mere direction to the mayor to sign a certain contract on behalf of the city.

We hold that Ordinance 33016 is legislative in character, and is therefore such an ordinance as is subject to a referendum vote of the people of St. Louis, and that respondents are properly proceeding, in accordance with their duties as chairman and members of the Board of Election Commissioners, to submit said ordinance to a vote of the people of the city of St. Louis. Under this view of the case, it is unnecessary to notice other points briefed by relators.

Our peremptory writ of mandamus is accordingly denied. All concur, except *Walker, J.*, absent, and *Woodson, J.*, not voting, and *Graves, C. J.*, who dissents with leave to file a dissenting opinion in ten days.