John W. COLT, Donald F. Smith, R. L. Westman, H. C. Borgmoure, David G. Hall, V. Sisk, Rex P. Merilalt, William J. Sams, C. M. Peterson, Francis M. White, Andrew J. Kemp, W. H. Newhard, George N. Chester and Stanley L. Brown, Appellants,

v.

Val P. BERNARD, Sam J. Barr, Irwin A. Lowry, Mose Woods, W. A. Crouch, Members, Board of Zoning Adjustment, Clay County, Missouri, and William E. Turnage, Secretary of said Board, Respondents.

No. 22239.

Kansas City Court of Appeals.

Missouri.

May 2, 1955.

Robert F. Sevier, Liberty, for appellants.

Arthur R. Kincaid, Lawson, Hale & Coleberd, Liberty, for respondents.

SPERRY, Commissioner.

This is an appeal from a judgment affirming an order of the Board of Zoning Adjustment of Clay County, respondents, whereby permission was given for use of a tract of 65 acres of land, zoned for agricultural purposes, for construction and operation of a trailer camp.

John P. and Lettie Filger were the owners of this tract of land, located in rural Clay County, which was then being used for agricultural purposes. They contracted to sell said land to F. F. Filger, Jr., and Lucille Filger, who filed before respondents herein, the Board of Zoning Adjustment, their application seeking a permit for the construction and operation of a "trailer camp" on this site. After hearing the evidence presented at a public hearing by applicants, and by objecting landowners and citizens who lived in that immediate vicinity and in adjacent area, respondents made and entered an order granting said permit but attaching thereto certain conditions.

Relators removed the cause to circuit court, by writ of certiorari. That court found the issues for applicants and respondents, and quashed the writ. This appeal followed.

Relators contend that all of the substantial evidence before the Board was to the effect that the granting of a permit would not promote the health, safety, morals, comfort and general welfare of the public; that the judgment is against the law and the evidence, and that the court should have reversed the order of the Board.

There was substantial evidence tending to prove that Clay County has recently experienced a tremendous growth in population. Many villages and towns have been incorporated throughout the western part of the county, and the population growth continues apace. Subdivisions spring up like mushrooms after a June rain. From the evidence, it appears that practically every landowner in the vicinity of the tract here involved hopes to sell his land for prices from $500 to $1,000 per acre, for development into housing projects. The most profitable crop grown by the land in that county appears to be houses.

The evidence was to the effect that this land is located in Englewood school district; that in September, 1953, there were 562 pupils enrolled in that district; that the district then had one school building but since has constructed another; that, at the end of the school year, June, 1954, there were 600 pupils enrolled; that the tax is $3.85 per hundred dollars valuation; that much new housing is in prospect, which would probably result in an additional increase in the schools; that 600 trailers would provide an additional 400 school age children; that the school population is increasing at a faster rate than school facilities can be provided; that the district's valuation is such that its bonded indebtedness may not be increased sufficiently to provide additional school facilities as fast as they are needed.

Relators offered the testimony of Mr. Davis, an appraiser, who stated that the land involved, and in that area, is best adapted to use for homesites; that its highest value is for that purpose; and that, in his judgment, this land has a value of more than $500 per acre for that purpose;

that construction and operation of a trailer court on the tract would have a depressing influence on land values in the vicinity because homeowners do not like to live near, or pass by, a trailer camp; that 25% of an area of 3,600 acres surrounding this tract had been platted. However, he said that this particular area had not developed; that he did not know why; that the nearest development was ¼ mile from the tract; that if taxes were doubled, on account of need for increased school facilities because of the trailer camp residents, that would also depress land values.

The evidence was that this area is within public water district No. 1, but that water is not available to this immediate portion of the area because the district cannot provide mains thereto with the revenue available. However, applicants propose to build their own lines to connect up with the water supply.

There was substantial evidence to the effect that the land in that vicinity is not productive and that the area is in stagnant economic condition. Two landowners, whose holdings adjoin this property, favored the permit; indicating that if water were brought in this development would increase values of other land nearby. There was evidence that one tract in the vicinity, valued at the hearing at $37,000, was assessed at $2,100.

There was testimony from a number of residents of a trailer camp located at Northmoor, in Platte County, owned and operated by F. F. Filger, Jr., and Lucille Filger, to the effect that that camp is clean, sanitary, and well operated; that people engaged in construction work have great difficulty in finding decent living quarters because they must move from time to time; that trailer housing permits such people to live in decency and rear their children under proper conditions; that people living in trailer camps of this character are of good character and conduct; that trailer residents pay substantial amounts in taxes on their trailers, automobiles, and other personal property.

There was also evidence to the effect that the tract in question is isolated and hard to find; that a bridge on one of the roads leading to it has been out for a long period of time; that respondent board members had great difficulty in finding the property; that they became "lost" when they drove out to view the location; that if a trailer camp is to be located in that part of Clay County, this is the place for it to be built.

■ Zoning regulations are legislative rather than judicial in character. Court review of such matters will, ordinarily, be limited to a determination of whether or not the zoning authority's action is reasonably in the interest of the public health, welfare, comfort and morals and is not arbitrary or discriminatory. State ex rel. Christopher v. Matthews, 362 Mo. 242, 240 S.W.2d 934, 938.

■ One of the benefits of well planned and administered zoning laws is to stabilize land values and uses which, in the main, are in the interests of the general welfare. Ordinarily zoning laws and regulations should avoid permitting land uses which will be highly detrimental to established property values in the neighborhood. It is contended by relators that such will be the effect of respondent's order in this case. However, we cannot say that the Board acted arbitrarily and unreasonable in this respect. The members are citizens of standing and ability in Clay County, and are familiar with property values there. They personally inspected this tract, and the area in which it is located. They had before them the zoning regulations and maps, and, no doubt, had access to maps of the county showing the platted areas. There is no evidence here that any land closer than 1/4 mile to this tract had been platted or sold for residential building. It is not an area of fine homes, nor is it in the process of developing into such an area. It is an area of farm land, much of it wholly unimproved, which the Board knew. They knew water was not available to the area and that, perhaps for that reason, that vicinity had not been developed. They may

have believed that *present* market values are not as high as relators indicated at the hearing. The situation here is entirely unlike that existing in State ex rel. Horn v. Randall, Mo.App., 275 S.W.2d 758, where there was *no* substantial evidence to support the rezoning order. Nor are the facts similar to those in Wippler v. Hohn, 341 Mo. 780, 110 S.W.2d 409, 411, cited by relators.

Applicants propose to construct facilities for 600 modern trailers, with roadways, lakes, utility buildings, shrubbery and other adornments and improvements. The Board may have reasoned that migrant workers, who are contributing much to the construction of factories, roads, bridges, homes, churches and school buildings, for the housing, comfort, and culture of the tremendously expanding population of Clay County, are entitled to have developed for their use a small acreage where they can park their trailers and rear their families in decency and relative comfort; that the health, morals and general welfare of the community would be promoted to providing a housing site, under health, sanitary conditions, for some 2,000 men, women, and children, many of whom, by reason of the nature of their employment, are not able to purchase or rent and occupy permanent homes. From the evidence, they could have believed that property values in this area would not be diminished by reason of the location there of a modern trailer court but that, actually, an economically stagnant area of the county might be increased in value and become more productive of taxes. It was within the province of the Board to weigh and determine these matters. We cannot say that the Board has acted arbitrarily, capriciously, or illegally.

Relators contend that establishment of this court will result in bringing in 400 additional school children with no corresponding increase in revenue to provide for their schooling. Applicants do not plan to have 600 trailers located there the first year but, be that as it may, we assume that the

Board is familiar with the school problems in an area of such rapid growth as that of Clay County. Every community near a large city is experiencing the same problem in that respect. But providing school facilities, and the taxes for their support, is not the problem of the Zoning Board, except as it may indirectly affect public health, welfare, etc. Furthermore, no convincing evidence was offered tending to prove that 600 modern trailers and the other personal property of the occupants, if assessed at reasonable values, would not be productive of considerable school revenue; and the land itself, if it produces a gross rental income of $12,000 per month, as applicants indicated, would stand an assessment such as would produce substantial revenues. The Board could have believed that the increase in property values would make available revenues sufficient to care for the increased cost of school facilities. Again, if that is a matter of major concern to a Zoning Board, it is one which the Board, no doubt, considered in arriving at the decision reached, and we cannot say that their decision is arbitrary or illegal.

Relators complain that the Board's action resulted in spot zoning. They cite State ex rel. Horn v. Randall, supra. We have heretofore stated that the two situations are not comparable.

█ It is next urged that no public hearing was held on the application of the persons to whom the permit was granted. That contention is based on the fact that the land was owned by J. P. and Lettie Filger when F. F. Filger, Jr., and Lucille filed this application. However, the latter then had a contract to purchase the property, and that contract was consummated and title was passed before the final order was made. When relators pointed out, at a hearing before the Board, that applicants did not have title to the land, J. P. Filger and Lettie were permitted to become parties to the proceeding, and the permit was therefore issued to all of the parties. We will not hold that such a trivial irregularity, if it is an irregularity, is sufficient to void the proceedings.

█ Relators also contend that the permit is unenforceable, against the permittees. This contention is based on the fact that respondents declared, in the permit, that certain conditions should be performed in the future, and ordered that if such conditions were not met the permit would be revoked. Whether or not respondents had that power, we are not required to rule in this case. However if, as relators contend, it is beyond the power of respondents to make or enforce such conditions, relators have no legal right to complain. They cannot insist that applicants' right to have a permit issue be denied because it may be impossible to compel applicants to do certain acts in the future if, in fact, such acts may be legally unenforceable. The question of whether or not such conditions are enforceable may be relevant in another law suit, but it is not material here.

█ It is contended that the order granting the permit is illegal because respondents did not make findings of fact and conclusions of law based on their personal inspection of the property. It does not appear that relators ever requested such findings or complained to the trial court on the ground that the Board failed to make findings. The matter is raised here, in argument, for the first time. The point is ruled against relators.

The judgment should be affirmed.

BOUR, C., concurs.

PER CURIAM.

The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The judgment is affirmed.

BROADDUS, J., and MAUGHMER and WEIGHTMAN, Special Judges, concur.

DEW, P. J., and CAVE, J., not sitting.