John **CARSON** et al. (Plaintiffs), Appellants,

v.

Joe **OXENHANDLER** et al. (Defendants), Respondents.

No. 30545.

St. Louis Court of Appeals.

Missouri.

April 19, 1960.

Motion for Rehearing or for Transfer to Supreme Court Denied May 16, 1960.

J. A. Gochenour, Frank Bild, Fred J. Hoffmeister, St. Louis, for appellants.

William R. Dorsey, Clayton, for respondents.

DOERNER, Commissioner.

Plaintiffs, legal voters in St. Louis County, seek through mandamus to compel the defendants, members of the Board of Election Commissioners of that county, to submit to a referendum election an ordinance enacted by the St. Louis County Council. The trial court denied the writ, and plaintiffs appealed.

This case is a sequel to that of Schmoll v. Housing Authority of St. Louis County, Mo., 321 S.W.2d 494, decided by the Supreme County on February 9, 1959. In that case the Supreme Court held that because of the explicit provision of the charter of St. Louis County requiring the County Council to enter into a cooperation agreement only by an ordinance, an agreement entered into with the Housing Authority of St. Louis County under a resolution of the County Council was invalid.

It appears from the record, and from the agreed statement of facts entered into below by the parties, that subsequent to the decision in the Schmoll case, Ordinance No. 1448, authorizing St. Louis County to enter into a cooperation agreement with its Housing Authority, was duly passed on April 1, 1959, and enacted on April 4, 1959. Before the date upon which it would have become effective, plaintiffs filed with the Board of Election Commissioners, on May 11, 1959, a petition calling for a referendum on the Ordinance in question. It is agreed between the parties that the referendum petition was filed in accordance with the procedural requirements of the applicable ordinances governing referendums, and that at a meeting of the Board of Election Commissioners held on June 5, 1959, a motion to submit Ordinance No. 1448 to a referendum vote at the next primary election, to be held on August 2, 1960, was defeated by an evenly divided vote.

On June 10, 1959, plaintiffs filed their petition for an alternative and absolute writ of mandamus, requesting the Circuit Court to order the defendants in their capacity as the Board of Election Commissioners to submit Ordinance No. 1448 to a vote of the electorate on August 2, 1960. The alternative writ was issued the same day, returnable June 22, 1959. On that day defendants filed their return in which they pleaded their answer to plaintiffs' petition, and, in addition, certain affirmative defenses, which will be subsequently adverted to. Plaintiffs filed a reply, raising certain constitutional and other questions relative to the affirmative defenses raised. The agreed statement of facts was filed on August 20, 1959, and the matter was subsequently submitted to the trial court. On October 23, 1959, the court below entered its findings of fact, conclusions of law, and the judgment heretofore stated.

We are met at the outset of our consideration of this case with the contention of the defendants that we lack jurisdiction of this cause. The basis for their argument is founded on the Charter and an ordinance of St. Louis County. Article VII, Section 77 of the Charter provides:

"The people reserve the power to propose and enact or reject ordinances and amendments to this Charter, independent of the Council, to approve or reject by referendum any ordinance of the Council except emergency measures, and to recall any elective County officer."

Section 81 of Article VII reads:

"The Council shall, within one year of the effective date of this Charter, establish by ordinance necessary procedures to effectuate the provisions of this Article."

Pursuant to that Section, the Council enacted Ordinance No. 134 to implement the initiative, referendum and recall provisions of the Charter. The pertinent part of that ordinance with which we are here concerned is Section 6, which provides:

"If the Board of Election Commissioners refuse to accept or file an initiative or referendum petition or recall petition, any citizen who is a legal voter may apply in 5 days to the Circuit Court of St. Louis County for a writ of mandamus to compel it to do so. If the court finds the petition legally sufficient, the Board of Election Commissioners shall file it as of the date offered. If the Court finds it not sufficient, the Board of Election Commissioners shall not hold an election thereon. The decision of the Circuit Court shall be final."

Defendants contend that as provided by the last sentence of that section the decision of the Circuit Court is final, and therefore that no appeal may be taken to this court. They argue that the Charter and ordinance provisions establish the entire scheme of referendum with respect to county ordinances, and that such a self-contained, special proceeding is a code complete in itself, not subject to the Code of

Civil Procedure, citing State ex rel. Bess v. Schult, Mo.App., 143 S.W.2d 486; Rosebraugh v. State Social Security Commission, Mo.App., 196 S.W.2d 27; Choate v. State Department of Public Health and Welfare, Mo.App., 296 S.W.2d 189; State ex rel. Schwartz v. Buder, Mo.App., 315 S.W.2d 867. Plaintiffs now contend, although their petition and the agreed statement of facts would indicate to the contrary, that their action in mandamus was brought under the provisions of Ch. 529 RSMo 1949, V.A.M.S., concerning mandamus, as well as under the procedure provided for in Ordinance No. 134; and that the limitation in Ordinance No. 134 making the decision of the Circuit Court final is in conflict with our statute on appeals, Section 512.020 RSMo 1949, V.A.M.S., and therefore invalid.

■ It is true that the Legislature may establish a special statutory proceedings to which the Code of Civil Procedure may not be applicable, as the cases cited by defendants, and others, demonstrate. This principle is recognized by Supreme Court Rule 3.02(c). But even if it be conceded for the sake of argument that plaintiffs' action was instituted in the Circuit Court under Ordinance No. 134, it was not a special *statutory* proceeding, for the ordinance is not a statute. By Section 512.020 the Legislature has guaranteed the right of appeal to "Any party to a suit.aggrieved by any judgment of any trial court in any civil cause. from which an appeal is not prohibited by the constitution, nor clearly limited in special *statutory* proceedings * * *." (Emphasis supplied.) The result is that the provision in Ordinance No. 134 denying the right of appeal, by attempting to make the decision of the Circuit Court final, is in conflict with Section 512.-020, establishing the general policy of the state with respect to appeals, and hence invalid. For while under its special Charter St. Louis County is possessed of a dual nature and functions in a dual capacity, both as a county and as a municipality, State on Information of Dalton ex rel. Shepley

v. Gamble, 365 Mo. 215, 280 S.W.2d 656, the powers granted to it must be exercised in a manner not contrary to the public policy of the state. Hellman v. St. Louis County, Mo., 302 S.W.2d 911. And, as was said in State ex rel. Cole v. Matthews, Mo., 274 S.W.2d 286, 292: "The provisions of the charter and ordinances of the county which are in conflict with prior or subsequent state statutes relating to governmental matters must yield." And see State ex rel. Dwyer v. Nolte, 351 Mo. 271, 172 S.W.2d 854; State ex rel. Volker v. Carey, 345 Mo. 811, 136 S.W.2d 324.

■ Defendants also assert that plaintiffs may not question the validity of that part of Ordinance No. 134 because " * * The right to referendum which they are asserting is one created and existing solely by virtue of the very code which they are attacking * * *." But Ordinance No. 134 did not create the right to referendum. That right was reserved by the people of St. Louis County when they adopted the charter. All that the Ordinance did was to establish part of the procedures to be followed in the exercise of that right. The last sentence is separable from the rest of Section 6 of the ordinance, and may therefore be declared invalid without affecting the remainder. It follows that we have jurisdiction of plaintiffs' appeal.

We pass, then, to the case on its merits. In their briefs both parties have raised numerous points relative to Section 3 of Ordinance No. 134, which reads:

"Ordinances enacted under and pursuant to administrative and ministerial authority vested in the Council by the Constitution or laws of this State, independent of the legislative power granted to charter counties by the Constitution, shall not be subject to referendum, and the Election Commissioners shall refuse to accept a referendum petition in such cases."

Plaintiffs' appeal was taken to the Supreme Court. In their brief, filed in that

court, plaintiffs attacked the constitutionality of that section, as well as its claimed conflict with Section 77 of Article VII of the Charter. Plaintiffs' attempts to raise constitutional questions respecting Ordinance No. 134 have been foreclosed by the mandate of the Supreme Court transferring this case to us, which recites that "* * * no constitutional question is properly raised or preserved * * *." Among other constitutional questions thus eliminated is the issue of whether Sections 3 and 6 of that Ordinance, which confers on the Board of Election Commissioners the authority to decide whether a proposed ordinance is or is not legislative in nature, is violative of Article 2, Section 1 of our constitution, V.A.M.S. as an encroachment on the judicial power of the courts. We note, in passing, that by Section 2 of Ordinance No. 134 the Board of Election Commissioners is also authorized to pass upon the constitutionality of an ordinance submitted by initiative, and is directed to refuse to submit it to a vote if it determines that the proposed ordinance is unlawful or unconstitutional.

The constitutional questions being thus eliminated, the only remaining issue respecting Section 3 of Ordinance No. 134 which we are called upon to decide is the validity of the provision therein that ordinances enacted by the council which are administrative or ministerial in nature shall not be subject to referendum. Plaintiffs point out that by Section 77 of Article VII of the Charter the people reserved the right to reject by referendum "any ordinance" of the council, and argue that those words must be accepted literally.

This contention disregards the rules of constitutional and statutory construction, the historical background and purpose of a referendum, the ordinary meaning of the word "ordinance," and the general rule of the applicability of referendum provisions to ordinances. It is a cardinal rule of construction of both organic and statutory law

that the intention of an act will prevail over the literal sense of its terms. Sutherland Statutory Construction, 3rd Ed., Vol. 2, Sec. 4706. State ex inf. Folk v. Talty, 166 Mo. 529, 559, 66 S.W. 361, 369; State ex rel. Kirks v. Allen, Mo.App., 255 S.W.2d 144, 148. And in State ex rel. Moore v. Toberman, 363 Mo. 245, 250 S.W.2d 701, 705, the court quoted with approval:

"'If a literal interpretation of the language used in a constitutional provision would give it an effect in contravention of the real purpose and intent of the instrument as deduced from a consideration of all its parts, such intent must prevail over the literal meaning. * * *' 12 C.J., Constitutional Law, § 44, p. 702; See, also, 16 C.J.S., Constitutional Law, § 16. State ex rel. City of Carthage v. Hackmann, 287 Mo. 184, 229 S.W. 1078. 'Where the spirit and intent of the instrument can be clearly ascertained, effect should be given to it, and the strict letter should not control if the letter leads to incongruous results clearly not intended.' State ex rel. Ward v. Romero, 17 N.M. 88, 100, 125 P. 617, 621. It should never be construed to work confusion and mischief, unless no other reasonable construction is possible. State ex rel. Jamison v. St. Louis-San Francisco Ry. Co., 318 Mo. 285, 300 S.W. 274."

▮ It is said that the adoption of the initiative and referendum as a part of the organic law in some jurisdictions came about as a result of the growth of dissatisfaction of the people with their legislative bodies. 82 C.J.S. Statutes § 116. Whatever may have been the historical reason for its introduction in Missouri, it was adopted on November 3, 1908 as an amendment to our Constitution of 1875.[1] Referendum is defined as "* * * the power of the people to approve or disapprove legislative acts * * *." 28 Amer.Jur., Initiative, Refer-

---

1. Now Const. art. 3, § 49 et seq., V.A.M.S.

endum and Recall, Sec. 2, and its purpose is " * * * to suspend or annul a law which has not gone into effect and to provide the people a means of giving expression to a legislative proposition, and require their approval before it becomes operative as a law * * *," 82 C.J.S. Statutes § 116. These statements serve to illustrate the principle that it is not every action of a legislative body which is subject to referendum, but only those measures which are legislative in character. It has been held, for example, that an act adopted by the General Assembly authorizing the Governor to call an election for the selection of delegates to a State convention, to be held for the purpose of voting upon the ratification of an amendment to the Constitution of the United States, was not subject to referendum as an " * * * act of the legislative assembly * * *" within the meaning of that phrase in Article IV, Section 57 of the Constitution of 1875, as amended. State ex rel. Tate v. Sevier, 333 Mo. 662, 62 S.W.2d 895, 87 A.L.R. 1315.

■ The rule that only acts legislative in their nature are subject to referendum is particularly applicable in the field of municipal corporations. The legislative body of a municipality, whether it be designated a city council, board of aldermen, or otherwise, is frequently called upon to act in an administrative as well as a legislative capacity by the passage of ordinances and resolutions. From an early date in the history of the right of referendum it has been recognized that to subject to referendum any ordinance adopted by a city council, whether administrative or legislative, could result in chaos and the bringing of the machinery of government to a halt. For, as was said in the oft-quoted case of Dooling v. City Council of City of Fitchburg, 242 Mass. 599, 136 N.E. 616, 617:

"As a matter of practical administration of municipal affairs this interpretation is the only one which would render the referendum a workable measure. If every dissatisfied bidder or

disappointed applicant for municipal work could invoke the machinery of the referendum of the statute, thereby suspending the taking effect of the measure thus assailed, efficiency and economy in the business administration of a city would be seriously affected. This consideration has led courts of some other jurisdictions to go far in restricting municipal referendum to legislative acts. * * *"

The general rule which has developed is stated in Seaton v. Lackey, 298 Ky. 188, 182 S.W.2d 336, 338, as follows:

"Although initiative and referendum provisions widely differ in their terminology, it is the general rule that they are applicable only to acts which are legislative in character, and not to those dealing with administrative or executive matters. * * *"

In accordance with this rule the words "any ordinance" in a provision for referendum have frequently, and almost universally, been construed to mean ordinances which are legislative in character. Keigley v. Bench, 97 Utah 69, 89 P.2d 480, 122 A.L.R. 756; Tillamook Peoples' Utility District v. Coates, 174 Or. 476, 149 P.2d 558; Dooling v. City Council of City of Fitchburg, supra; Hopping v. Council of City of Richmond, 170 Cal. 605, 150 P. 977; Simpson v. Hite, 36 Cal.2d 125, 222 P.2d 225; State ex rel. Frank v. Salome, 167 Kan. 766, 208 P.2d 198; People ex rel. Holvey v. Kapp, 355 Ill. 596, 189 N.E. 920; Seaton v. Lackey, supra; Hawkins v. City of Birmingham, 248 Ala. 692, 29 So.2d 281; Denman v. Quin, Tex.Civ.App., 116 S.W.2d 783.

The rule that referendum petitions apply only to an ordinance legislative in nature was applied in State ex rel. Wilkinson v. Edwards, 305 Mo. 431, 266 S.W. 127. There the Charter of the City of St. Louis provided that the people by referendum might reject "any ordinance." The plaintiffs sought to prevent the Board of Election Commissioners from submitting an ordinance to a referendum. The Supreme

Court in that case recognized the general rule by stating that the controlling question for decision was whether or not the ordinance under consideration was legislative in character, and by holding that because the ordinance was legislative, it was subject to referendum.

As a constitutional charter county, St. Louis County performs both state and municipal functions. State on Information of Dalton ex rel. Shepley v. Gamble, 365 Mo. 215, 280 S.W.2d 656. Section 6 of Article III of the Charter provides that "The governing body of the County shall be the County Council * * *" and by Section 22 of the same Article it is expressly given 23 specific powers which, while too numerous to quote herein, obviously include matters that are administrative in nature as well as others which are legislative. These express powers (among them being the power to enter into a cooperation agreement such as here involved) may be exercised only by the passage of an ordinance. Schmoll v. Housing Authority of St. Louis County, supra. If the words "any ordinance" in the provision for referendum, Art. VII, Sec. 77, are taken literally, contrary to the general rule and the authorities cited, it would mean that administrative measures providing for the day to day operations of the county would be subject to at least temporary suspension, and possible rejection, with the serious results which have been mentioned. In the light of the historical purpose of referendum and the construction placed upon similar provisions by the courts, and in the absence of a clear declaration of a contrary intent, we are of the opinion that the framers of the Charter did not intend that administrative ordinances as well as those legislative in character should be the subject of referendum. The council, therefore, did not exceed its authority by providing in Sections 3 and 6 of Ordinance No. 134 that only ordinances legislative in nature should be submitted to referendum.

Having disposed of those questions, we come to the final and decisive issue in the case: Is Ordinance No. 1448 legislative or administrative in character? Preliminary to a determination of that question a statement of additional facts is in order. The preamble of Ordinance No. 1448 recites that the County Council by Resolution No. 45 of 1952 declared the need for a Housing Authority in St. Louis County; that by an order and resolution the Council had authorized the County Supervisor to enter into a cooperation agreement with the Housing Authority for approximately 600 low-rent housing units to be constructed and operated in St. Louis County, which agreement the County Supervisor had executed on March 22, 1956, Amended July 11, 1956; that the Supreme Court had held that the cooperation agreement should have been authorized by an ordinance enacted by the council rather than by a resolution or order (Schmoll v. Housing Authority of St. Louis County, supra); and that it was the intention of the council to affirm by ordinance the authorization of the cooperation agreement previously authorized by resolution.

By Section 16 of Article VI of the Constitution, municipalities or political subdivisions of the State are empowered to contract and cooperate with other municipalities or political subdivisions, or with the United States, for the construction and operation of any public improvement or facility. This constitutional provision has been implemented by Sections 70.210–70.320 RSMo 1949, V.A.M.S. The provisions of those constitutional and statutory provisions relating to cooperation agreements were copied, almost literally, into Section 22(18) of the county charter, so that there can be no doubt about the authority of the council to enter into a cooperation agreement with the Housing Authority, provided it does so (as is here proposed) by ordinance. Schmoll v. Housing Authority of St. Louis County, supra. The constitutionality of the Housing Authorities Law, Sections 99.010–99.230 RSMo 1949, V.A.M.S., has also been settled. St. Louis Housing Authority v. City of St. Louis, 361 Mo. 1170, 239 S.W.2d 289; Bader Realty & Investment Co. v. St.

Louis Housing Authority, 358 Mo. 747, 217 S.W.2d 489; Laret Investment Co. v. Dickmann, 345 Mo. 449, 134 S.W.2d 65. The plaintiffs do not question either the constitutionality of the proposed agreement or the authority of the council to enter into it, but only seek a referendum on Ordinance No. 1448 by which it is authorized.

The proposed cooperation agreement between the Housing Authority and the county set forth in Ordinance No. 1448 is much too long to be quoted, or even fully digested. For our immediate purpose it is sufficient to say that it provides that the Housing Authority (referred to as the Local Authority) shall endeavor to secure a contract, or contracts, with the United States Public Housing Administration for loans and annual contributions covering the construction and operation of approximately 600 units of low rent housing. The county, (referred to in the agreement as the "Municipality") among other things, binds itself to eliminate other unsafe or unsanitary dwellings in the area of the project; to vacate streets, roads and alleys; to grant deviations from its building code; to make changes in the zoning of the site and surrounding territory; to accept grants of easements; to accept the dedication of streets, roads, alleys and sidewalks; and, in general, "Cooperate with the Local Authority for such other lawful action or ways as the Municipality and the Local Authority may find necessary in connection with the development and administration of such Project." These provisions will subsequently be discussed in greater detail.

While, as stated, the constitutionality of such cooperation agreements have been before the Supreme Court of Missouri in the four cases cited, in none of them was the question presented of whether an ordinance authorizing such an agreement was legislative or administrative in character. The only reference to that issue is the comment in Schmoll v. Housing Authority of St. Louis County, Mo., 321 S.W.2d 494, 498, that "In so far as taking advantage of the housing act is concerned it may be that the

county acts administratively  *  *  *," which the trial court construed as an adjudication that in adopting Ordinance No. 1448 the council was acting administratively. That issue, however, was not before the Supreme Court in Schmoll v. Housing Authority of St. Louis County, and as the learned writer of that opinion subsequently stated regarding the question there under consideration " *  *  *  it makes but little difference whether the council was acting legislatively  or administratively  *  *  *" loc. cit. 499. For that reason we do not construe the decision in Schmoll v. Housing Authority of St. Louis County, supra, as determinative of the question here presented.

Housing Authority Laws have been adopted by many of the states, and their constitutionality has been upheld in numerous cases. So far as we have been able to determine from the authorities furnished us by industrious counsel, and from our own research, the appellate courts of only six states have, directly or indirectly, passed upon the question here presented. In two of those states, California and Montana, actions by the governing body of the municipalities in approving cooperation agreements have been held to be administrative in character; in the remaining four states, Arkansas, West Virginia, Virginia and Florida, such action has been held to be legislative in nature. A review of those cases will be helpful.

In the principal case relied on by defendants, Kleiber v. City and County of San Francisco, 18 Cal.2d 718, 117 P.2d 657, the Supreme Court of California had before it an action by a taxpayer to enjoin the performance of a cooperative agreement entered into by the Board of Supervisors under the authority of a resolution. The charter of the city provided that " 'every legislative act shall be by ordinance'." The California Housing Authorities Law, Stats. 1938, Ex.Sess., p. 9, West's Ann.Health & Safety Code, § 34200 et seq. was similar to our Missouri Act, in that it provided that a housing authority was thereby created in

each city and county but that the authority should not function until or unless the governing body of the city by proper resolution declared that there is a need for an authority to function. (See Section 99.040 RSMo 1949, V.A.M.S.) However, as the California Supreme Court pointed out, at the same session of the legislature there was also passed another act, called the Housing Cooperation Law. That act, Stats.1938, Ex.Sess., p. 2, West's Ann. Health & Safety Code, § 34500 et seq., specifically provided that for the purpose of aiding and cooperating in the construction or operation of housing projects, a city might contract with a housing authority to dedicate or vacate streets, roads and alleys; zone or rezone land; and deviate from its building code. And by Section 7 of the Housing Cooperation Law it was expressly stated that " * * * The exercise by a State public body of the powers herein granted may be authorized by resolution of the governing body * * *."

The basis of the decision of the California court was that the Housing Cooperation Law expressly authorized the city to enter into a cooperation agreement by resolution, and that such statutory authority was paramount; that the legislature by the Housing Authorities Law and the Housing Cooperation Law had established the legislative policy; and that when the city, in conformity with those acts, authorized the cooperation agreement by a resolution, it was merely acting administratively.

The extent to which the holding in Kleiber v. City and County of San Francisco, supra, has been carried by the Supreme Court of California is illustrated by the subsequent cases of Housing Authority of City of Eureka v. Superior Court in and for Humboldt County, 35 Cal.2d 550, 219 P.2d 457; Housing Authority of City of Los Angeles v. City of Los Angeles, 38 Cal.2d 853, 243 P.2d 515; and Housing Authority of City of Los Angeles v. City of Los Angeles, 40 Cal.2d 682, 256 P.2d 4. In the first of those cases a resolution of the city council approving the Housing Authorities' application to the Public Housing Administration for a loan was held to be administrative in character, and therefore not subject to referendum. In the second of those cases it was held that the Housing Authority was entitled to a writ of mandamus to compel the city to acquire and deed land to the Housing Authority, to vacate and close streets, and otherwise cooperate with the Authority, as provided by the terms of the cooperation agreement. The third case is a sequel to the second. The Housing Authority complained that the city had refused to carry out the mandate of the court in that the city council had refused to annex to the city a "county island," lying within the city limits, upon which the Housing Authority proposed to build a part of the 10,000 unit project. The Supreme Court of California held that by its course of conduct the city had agreed to annex the county island, and ordered the city council to do so.

State ex rel. Great Falls Housing Authority v. City of Great Falls, 110 Mont. 318, 100 P.2d 915, was also an original proceeding wherein the Housing Authority sought a writ of mandamus to compel the city council to comply with a cooperation agreement by zoning and rezoning certain ground, and by vacating certain streets and alleys. The facts were that following the execution of the cooperation agreement (authorized by resolution), by which the city obligated itself to zone and rezone the land in the project, and to vacate the streets and alleys, when requested to do so by the Housing Authority, a change occurred in the personnel of the city council. When the Housing Authority requested the city council to take action regarding zoning and vacating the streets and alleys the city council refused to do so.

The Montana Housing Authorities Law, like the California Housing Cooperation Law, expressly provided that a city might enter into a cooperation agreement with its Housing Authority to furnish services, provide and maintain parks, sewage, water and other facilities, vacate and open streets, and

to zone and rezone any part of the city. Montana Rev.Code 1935, Sec. 5309.30. In granting mandamus the Supreme Court of Montana agreed with the Supreme Court of California that in the light of the Housing Authorities Law, having once activated the Authority " * * * the general municipal statutes ceased to have any further application in the premises and all things thereafter done and performed in relation to the Great Falls Housing Authority passed under the exclusive control of the provisions of the Housing Authorities Law * * *." 100 P.2d loc. cit. p. 920. Thus, as in Kleiber v. City and County of San Francisco, supra, the basis of the Montana court's decision is that the general statutes authorizing the terms and execution of a cooperation agreement by a city supersede and are paramount over the municipal ordinances.

Turning to the decisions of those states holding that an ordinance or resolution authorizing the execution of a cooperation agreement is legislative in nature, the latest of these is Barnes v. City of Miami, 47 So.2d 3, 6, decided by the Supreme Court of Florida on June 26, 1950. That case involved an action to enjoin the city and its Commission from submitting to the voters of the City of Miami an initiative petition to determine whether the Commission should adopt an ordinance providing for low-cost housing and slum clearance; and for a cooperation agreement between the housing authority and the city. The plaintiffs contended that the proposed ordinance was wholly administrative in nature, and that under the terms of the Charter of the City of Miami it was therefore not subject to adoption by the initiative.

Florida, like California, had also passed a Housing Cooperation Law which expressly gave to cities the authority to enter into cooperation agreements and to furnish services and facilities, vacate streets, make changes in its zoning regulations, and otherwise cooperate with its housing authority. Sec. 422.01–422.08, Florida Statutes 1941, F.S.A. The Supreme Court of Florida, after reviewing the terms of the cooperation agreement regarding the furnishing of facilities, vacation of streets, waiver of building regulations, zoning and other provisions of the contract stated:

"When these matters are considered, there would seem to be little question that the issue to be submitted to the electorate should be classed as legislative and not executive or administrative. The long-range program of providing low-cost housing facilities will certainly be permanent and general in character. The acts to implement the program will be characteristically legislative, in that exemption from taxation must be given and provisions made for payments in lieu of taxes; streets must be vacated within the area of the project as may be necessary in its development; waivers of the City building code must be granted; changes must be made in zoning restrictions; grants of easements, and dedications of streets, roads, alleys and sidewalks, must be accepted. All these things must be done through the adoption of ordinances by the legislative body of the City; for the City Manager, as the administrative head of the municipal government, does not have the power or authority to close streets, give waivers of the building code, change zoning restrictions, or accept grants of easements or dedications of streets, roads, alleys and sidewalks. The City Manager may not bind the City or enter into a contract of the nature proposed without authorization of the City authorities or the electors who will be bound by it.

"From this we conclude that whatever may be the extent of the City's power under the initiative provision of its charter the authority of the City to submit the proposed issue to the electors must be sustained, whether un-

der the view that the provision is unlimited in its aspect or whether on the ground that the matter proposed is legislative in character."

A few months older than the Florida case is Scroggins v. Kerr, 217 Ark. 137, 228 S.W.2d 995, decided April 17, 1950. There the City Council of Little Rock on October 14, 1940, adopted an ordinance authorizing the Mayor to enter into a co-operation agreement with the Housing Authority for the erection and operation of not to exceed 300 low-rent dwellings. On December 19, 1949, the city council adopted Ordinance No. 8163, authorizing the Mayor to enter into a new cooperation agreement with the Housing Authority for the construction of a 1000-unit project in Little Rock. A petition was filed seeking a referendum on Ordinance No. 8163, and the city council refused to call an election. The action before the court was whether a writ of mandamus should be granted to compel the city council to hold the referendum election.

In its Housing Authorities Law, Acts of Arkansas 1937, Act No. 298, p. 1074, there was also incorporated the substance of a Housing Cooperation Law; that is, by Section 25 thereof, the city was explicitly authorized to enter into a cooperation agreement binding it to furnish services and facilities, vacate and open streets, zone and rezone, grant deviations from its building regulations, and otherwise co-operate with its housing authority. The Supreme Court of Arkansas took the position that its Housing Authorities Law merely " * * * laid the groundwork for local housing Authorities in the cities and authorized the cities, after they recognized the existence of the Authorities to make cooperative agreements with them * * * 228 S.W.2d loc. cit. page 1000. It regarded the resolution of the city declaring the need for its Housing Authority as " * * * preliminary steps only * *," and held that the ordinance authorizing the execution of the cooperation agreement as "a new law" 228 S.W.2d loc. cit. page 1000,

legislative in character, and therefore subject to referendum.

In Mumpower v. Housing Authority of City of Bristol, 176 Va. 426, 11 S.E.2d 732, the Supreme Court of Appeals of Virginia made the most exhaustive study of the various provisions of a cooperation agreement that was made by any appellate court. That was an action by a taxpayer for a declaratory judgment respecting the constitutionality of the Housing Authorities Law of that state and the validity of, among other matters, the cooperation agreement entered into by the City of Bristol and its Housing Authority. There was also contained in the Virginia Housing Authorities Law, Sections 3145(1)–3145(24), 1938 Supp. to Code of 1936, express authority to a city to enter into the usual cooperation agreement. After holding the Law constitutional, the court considered, paragraph by paragraph, the terms of the cooperation agreement to determine whether, as plaintiff contended, the contract was invalid because it bound future members of the city council in the exercise of their legislative functions, and attempted to barter away the police power of the city. It held that certain provisions did not do so, but as to the provision that the city agreed to vacate streets and alleys located in the project or adjacent thereto which the Housing Authority found necessary in the reasonable development of the project, the court said that a city acts legislatively and in a discretionary manner in laying off streets and sidewalks, and that that provision " * * * clearly, if sustained, places beyond the control of the local legislative representatives of the people, the determination of matters directly and vitally effecting the public safety. The location of public ways is purely a legislative function." 11 S.E.2d loc. cit. page 743. For those reasons, it held that provision invalid, as well as the one which bound the city to accept such land as the Housing Authority deemed necessary for streets and alleys. On that score it said:

" * * * The Housing Authority is created for a specific purpose, and there is not enumerated among its powers the right to determine the location of the city's streets. It therefore has no legislative powers in that respect. It is simply inconsistent with the fundamental concepts of a city as a municipal corporation to say that another political subdivision located within its bounds may dictate as to when and where it shall open, close, pave and otherwise deal with public ways within that city. The statute does not contemplate that such authority or the city shall so deal with the police power of the city * * ."

The earliest case on the subject is Bachmann v. Goodwin, 121 W.Va. 303, 3 S.E.2d 532, 533, decided in 1939. There the city council by resolution created the Housing Authority, and by a subsequent ordinance, adopted December 27, 1938, authorized the city to enter into a cooperation agreement with the Housing Authority, which was executed on January 13, 1939. On February 28, 1939, a proposed ordinance repealing the ordinance of December 27, 1938, was presented to the city council. The council refused either to adopt the ordinance or to submit it to a vote, and the petitioners then sought by their action in mandamus to compel the council to submit the proposed ordinance to a vote of the people. Section 11 of the city charter provided that " 'Any proposed ordinance may be submitted to the council by petition, signed by one thousand electors of the city' " and then stated that the city council could adopt the proposed ordinance, or, if it refused to do so, should submit it to the people.

Declining to rule on whether actions of the city council, which could be reviewed by a referendum, had to be confined to matters legislative in nature, or included those administrative in character, the Supreme Court of Appeals of West Virginia said:

"Without determining whether Section 11 was intended to cover legislative action of the council rather than its administrative functions, we are of the opinion that the resolution and ordinance under which the housing authority of the City of Wheeling proposes to act, are legislative in their character rather than administrative. That the council of the City of Wheeling has legislative power clearly appears from Section 3, Part I, of its charter, and we can conceive of no more solid basis for the exercise of legislative authority by the council than a matter of such public importance as the creation of a public housing authority in the city. It necessarily follows that if the ordinances establishing the authority and authorizing it to act are legislative in their character, an ordinance seeking the repeal of the authority is likewise legislative, and for this reason, the point raised that Section 11 may be used in trivial matters, if that were an argument proper to be considered, does not apply to the present situation."

It appears that the rationale of the California and Montana cases is that the statutes which expressly authorize a city to enter into a cooperation agreement to vacate and open streets, waive building restrictions, and otherwise cooperate with a housing authority are the declaration of a legislative policy; that they are controlling over the provisions of municipal charters or ordinances; and that when a city exercises such statutory powers it acts merely administratively. The basis of the Florida, Arkansas and Virginia cases, on the other hand, is that such cooperation agreement statutes are permissive and in the nature of enabling acts; that it is the terms of the cooperation agreement which determine the character of the act of the city's governing body; and that since the opening and vacating of streets, the establishment of building regulations and similar actions are legislative in character,

a contract by which the city binds itself to exercise such powers is likewise legislative in character.

There is no statutory enactment in Missouri comparable in terms to the California Housing Cooperation Law. Nor does our Housing Authorities Law, Sections 99.010–99.230 RSMo 1949, V.A.M.S., (as do such Laws in some states) contain provisions expressly authorizing our cities and counties to enter into cooperation agreements containing terms similar to the agreement under consideration. However, the General Assembly, by the adoption of Sections 70.210–70.230 RSMo 1949, V.A.M.S., has enacted what might be termed our housing cooperation law, although it is much broader in scope. Section 70.220 provides that any political subdivision of the state may contract and cooperate with any other political subdivision " * * * for the planning, development, construction, acquisition or operation of any public improvement or facility, or for a common service; provided, that the subject and purposes of any such contract or cooperative action made and entered into by such municipality or political subdivision shall be within the scope of the powers of such municipality or political subdivision. * * *" By Section 70.230 a municipality may exercise the power referred to in Section 70.220 " * * * by ordinance duly enacted, * * *" or, if a county, then by order of the county court. While that act has been held to authorize a city by ordinance to enter into a cooperation agreement similar to the one contained in Ordinance No. 1448, St. Louis Housing Authority v. City of St. Louis, 361 Mo. 1170, 239 S.W.2d 289, neither the act, nor that decision, throws any light on the issue of whether an ordinance authorizing such an agreement is legislative or administrative in character.

■ By the terms of the proposed cooperation agreement between St. Louis County and its Housing Authority the county binds itself, among other things:

to eliminate, within 5 years from the completion of this project, other unsafe and unsanitary dwelling units situated in the locality of this project (there are two exceptions to this requirement, but whether either would be applicable cannot be determined from the transcript); to vacate such streets, roads and alleys within the area of the project as may be necessary in the development thereof, and convey without charge to the Housing Authority such interest as the county may have in the vacated area; to grant deviations from its building code; to make changes in any zoning of the site and surrounding territory; to accept grants of easements necessary for the development of the project; and to cooperate with the Housing Authority in such other lawful action or ways as the county and the Housing Authority may find necessary for the development and administration of the project.

As the Virginia and other courts pointed out, the exercise of most, if not all, of such powers by a municipality is regarded as legislative in character. Our Supreme Court has held that a city acts in its governmental or legislative capacity in establishing streets. Ely v. City of St. Louis, 181 Mo. 723, 729, 81 S.W. 168; Kansas City v. Hyde, 196 Mo. 498, 506, 96 S.W. 201, 7 L.R.A.,N.S., 639. It would seem to follow that in vacating a street a municipality acts in the same capacity. State ex rel. Wilkinson v. Edwards, 305 Mo. 431, 266 S.W. 127, 130. In a very recent case, Downing v. City of Joplin, Mo., 312 S.W.2d 81, 83, it was said: " * * * The act of a city in enacting zoning ordinances and thereby imposing restrictions on the use of property located within its limits is a legislative function * * *"; and see State ex rel. Ludlow v. Guffey, Mo., 306 S.W.2d 552, 557; Colt v. Bernard, Mo.App., 279 S.W.2d 527, 529. The enactment of building regulation ordinances is a governmental function, valid under the police powers delegated to a city. Kalbfell v. City of St. Louis, 357 Mo. 986, 211 S.W.2d 911. If

the direct enactment of such ordinances is the exercise of a legislative power, it would seem to logically follow that a contract whereby a city or county binds itself to adopt ordinances to open and close streets, to grant deviations from its building code, to zone and rezone the area in and surrounding the project, and to otherwise cooperate with the Housing Authority, is likewise legislative in character.

Furthermore, while there are decisions to the contrary, as the cases cited from other states have shown, we are of the opinion that the right of the people of a city or county to express their wishes on an undertaking of this nature should not be denied by a too-restrictive interpretation of the character of the ordinance under consideration. It is not amiss to point out, in that connection, that if the rationale of the California cases were to be adopted the voters in a city or county, would never have the opportunity to pass upon the creation and operation of such a housing program within their political subdivision. Acting alone, the people of St. Louis County were not, of course, able to submit the Housing Authorities Law enacted by the General Assembly to a referendum. And since that Act provides, in Section 99.040 RSMo 1949, V.A.M.S., that the housing authority created by the legislature for the county may be activated " * * * by resolution or other declaration * * " of its governing body (as was done here), it would undoubtedly be held, under the reasoning of the California and Montana cases, that such a resolution or declaration was not subject to referendum because it was only administrative in nature.

We are not to be understood as questioning the propriety or the wisdom of the constitutional and statutory provisions regarding slum clearance and low-rent housing. Such matters are political questions, within the exclusive judgment of the General Assembly. But, however well-intentioned and beneficial may be the purposes and results of the program contemplated by the Housing Authorities Law, it is our opinion that when, as here, a charter county undertakes, by contract, to bind itself to enact in the future additional ordinances so vitally important to the public health, safety, convenience and general welfare as are expressed in Ordinance No. 1448 (an undertaking from which, once executed, there can be no withdrawal, and one that can be enforced by mandamus, at the instance of the Housing Authority, according to the California and Montana decisions) that the ordinance authorizing such a contract is legislative in character, and therefore subject to referendum.

For the reasons stated the Commissioner therefore recommends that the judgment be reversed and that the defendants in their capacity as the Board of Election Commissioners of St. Louis County be directed to submit the plaintiffs' referendum petition on Ordinance No. 1448 to a vote at the next primary election, to be held on August 2, 1960.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of the court.

Accordingly, the judgment is reversed and defendants as the Board of Election Commissioners of St. Louis County are directed to submit the plaintiffs' referendum petition on Ordinance No. 1448 to a vote at the next primary election, to be held on August 2, 1960.

WOLFE, P. J., and ANDERSON and RUDDY, JJ., concur.